******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SANTINA DI TERESI ET AL. *v.* STAMFORD
HEALTH SYSTEM, INC., ET AL.
(AC 35436)

DiPentima, C. J., and Gruendel and Beach, Js.

*Argued February 18—officially released April 15, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Tobin, J. [motion to strike]; Hon.
Kevin Tierney, judge trial referee [motions to substitute,
for summary judgment, judgment]; Hon. Frank H.
D'Andrea, Jr., judge trial referee [judgment].)

*Richard Lewis*, with whom, on the brief, were *Stephen A. Finn* and *Christine D. Salmon*, for the appellants (plaintiff Virginia Di Teresi et al.).

*Eric J. Stockman*, with whom was *Corey S. Fitzgerald*, for the appellees (named defendant et al.).

*Opinion*

GRUENDEL, J. The plaintiffs, Virginia Di Teresi in her individual capacity and as executrix of the estate of her mother, Santina Di Terisi,[1] and Emmanuel J. Di Teresi, executor of the estate of his late mother, appeal from the summary judgment rendered by the trial court in favor of the defendant Stamford Health System, Inc.[2] On appeal, the plaintiffs claim that the court improperly concluded that allegations of emotional distress were insufficient to meet the ascertainable loss requirement of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The relevant facts, as previously set forth by this court, are as follows. "On March 23, 2004, the named plaintiff, Santina Di Terisi (Santina), a mostly noncommunicative ninety-two year old woman suffering from dementia, advanced Alzheimer's disease, Parkinson's disease, and other ailments, was victimized by a hospital employee at the defendant Stamford Hospital (hospital), where she was being treated as a 'total care patient.' The assault, perpetrated by a certified nurse's assistant, Robert Mayes, occurred at approximately 10 a.m. The assault was interrupted when a nurse, Latrina Futrell-Annosier, happened into [Santina's] hospital room and discovered the untoward event. Futrell-Annosier, shocked, retreated from [Santina's] room after a few seconds and went to get help. Left alone for a period of time, Mayes washed [Santina's] linens and disposed of her hospital gown, thus eliminating the possibility of collecting physical evidence from these items. Mayes was escorted from the hospital at about 11 or 11:30 a.m.

"Santina's daughter, Virginia Di Teresi (Virginia), arrived at the hospital at about 2 or 2:30 p.m. . . . For the next three hours, Virginia sat with her mother. Unaware that the assault had occurred, Virginia nonetheless noticed that her mother was 'disturbed, agitated and restless.' At about 5 or 5:30 p.m., three hospital employees came to see Virginia in her mother's hospital room, removed her to an office and related to her the details of what Mayes reportedly had done. At approximately the same time, hospital employees informed [Santina's] primary care physician, Santi Neuberger, of the assault. . . .

"During the hours between the incident and Virginia's being apprised of it, news of the incident made its way up the hospital's chain of command. Representatives from the hospital's risk management committee, human resources department and security staff met and discussed the appropriate response to the alleged assault, including, specifically, when to contact the Stamford police. The hospital contacted outside legal counsel, who advised the hospital to obtain a statement from Mayes, to report the incident to the police and to con-

duct a rape examination of [Santina].

"Following the advice of its attorneys, the hospital called Mayes at approximately 3 p.m. and asked him to return to the hospital. He arrived at about 4 p.m. and met with the hospital's head of security and an employee from human resources, who confronted him with the nurse's accusations. Mayes denied the allegations . . . . The Stamford police department was contacted at approximately 4:30 p.m. The hospital administered a rape kit examination of [Santina] at approximately 9 p.m.

"Although the basic factual contours of what occurred on March 23, 2004, are not in dispute, the parties interpret the hospital's actions in the hours following the assault quite differently. From Virginia's perspective, the hospital deliberated for an unacceptably long time before addressing the alleged assault because, according to Virginia, its 'primary concern was the negative impact this assault would have on its reputation and its potential liability.' While the hospital considered only its reputation, Virginia alleged, [Santina] was not adequately cared for because none of the nurses who treated her that day were apprised of the assault and her primary care physician was not contacted until late in the afternoon. . . . The hospital counters that . . . investigating an assault of this nature presented 'an entirely novel situation.' As such, the hospital, in its view, acted deliberately in investigating the claim, in part to ensure that the rights of Mayes and Futrell-Annosier were respected.

"On March 22, 2006, Virginia and [Santina] commenced this action against the hospital, Stamford Health System, Inc., and Mayes, asserting nineteen causes of action . . . ." (Footnotes omitted.) *Di Teresi* v. *Stamford Health System, Inc.*, 142 Conn. App. 72, 74–78, 63 A.3d 1011 (2013). The defendant thereafter filed a motion for summary judgment, inter alia, as to count twelve of the plaintiffs' complaint, which set forth the CUTPA claim against the hospital. The court granted the defendant's motion for summary judgment, finding that there was "no genuine issue of material fact that any loss of money or property was suffered by nor was there any personal injury suffered by [Santina]. . . . [H]er claim of emotional distress as an ascertainable loss does not meet CUTPA requirements." This appeal followed.

"[T]he standards governing our review of a trial court's decision to grant [or deny] a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the

evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . Finally, the scope of our review of the trial court's decision to grant [or deny] [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 346–47, 63 A.3d 940 (2013).

The plaintiffs allege that the hospital's actions violated CUTPA in that they constituted an unfair practice in the conduct of trade, business or commerce, and caused Santina to suffer an ascertainable loss of money or property. They state that Santina suffered such ascertainable loss when the hospital failed to provide her with proper medical treatment after she was sexually assaulted, and when it delayed in reporting the assault to the police, hospital security, and Santina's physician and family. The plaintiffs therefore claim that the court erred in granting the defendant's motion for summary judgment because it improperly concluded that Santina's allegations of emotional distress were insufficient to meet the ascertainable loss requirement of CUTPA. Such conclusion, they argue, is inconsistent with the definition of ascertainable loss, as adopted by our Supreme Court. We disagree.

"[T]o prevail on a CUTPA claim, the plaintiff must prove, pursuant to General Statutes § 42-110b (a), that the defendant engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce' and that as a result of the use of the act or practice prohibited by § 42-110b (a), the plaintiff suffered an 'ascertainable loss of money or property.' " (Footnote omitted.) *D'Angelo Development & Construction Corp.* v. *Cordovano*, 121 Conn. App. 165, 181, 995 A.2d 79, cert. denied, 297 Conn. 923, 998 A.2d 167 (2010). "The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation." (Internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 287 Conn. 208, 217–18, 947 A.2d 320 (2008).

Our Supreme Court has further defined the ascertainable loss requirement of CUTPA, stating: "An ascertainable loss is a loss that is capable of being discovered, observed or established. . . . The term loss necessarily encompasses a broader meaning than the term damage, and has been held synonymous with deprivation, detriment and injury. . . . To establish an ascertain-

able loss, a plaintiff is not required to prove actual damages of a specific dollar amount. . . . [A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known." (Citations omitted; internal quotation marks omitted.) Id., 218.

The plaintiffs claim that the definition of ascertainable loss, with respect to CUTPA, is construed liberally such that it includes claims of emotional distress. They support their position by citing our Supreme Court's decision in *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 614, 440 A.2d 810 (1981), which stated: "Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." The court continued that discussion, however, stating: "CUTPA is not designed to afford a remedy for trifles. In one sense the buyer has lost the purchase price of the item because he parted with his money reasonably expecting to receive a particular item or service. When the product fails to measure up, the consumer has been injured; he has suffered a loss. In another sense he has lost the benefits of the product which he was led to believe he had purchased. That the loss does not consist of a diminution in value is immaterial, although obviously such diminution would satisfy the statute." Id.

The plaintiffs' comparison of the present case to the discussion by our Supreme Court in *Hinchliffe* is misguided. In that case, the Supreme Court was discussing a loss that was measurable. It gave the example: "To the consumer who wishes to purchase an energy saving subcompact [motor vehicle] . . . it is no answer to say that he should be satisfied with a more valuable gas guzzler." Id. In that example, there is a clear expectation of the benefits of that energy saving subcompact and a loss of monetary value, though the precise amount may not be known. In contrast, the plaintiffs in the present case, on behalf of a patient of the hospital, claim to have a "reasonable expectation that she would be safe from harm" and that the hospital "would properly care for her." This reasonable expectation is not measurable for purposes of sustaining a CUTPA violation, nor is the loss of that expectation. Moreover, the plaintiffs alleged only that the hospital's "actions and inactions constitute discoverable and observable deviations from what [Santina] reasonably expected and was entitled to as a customer of the hospital." They did not claim that Santina suffered any actual monetary or physical loss. The plaintiffs, therefore, failed to provide an evidentiary foundation to the court in opposing the defendant's motion for summary judgment that Santina had, in fact, suffered a financial loss or a personal injury. See *Santorso* v. *Bristol Hospital*, supra, 308 Conn. 347 ("the party opposing . . . a motion [for summary judgment] must provide an evidentiary foundation to dem-

onstrate the existence of a genuine issue of material fact" [internal quotation marks omitted]). The court, therefore, properly concluded that there was no genuine issue of material fact as to whether the plaintiffs' claim of emotional distress constituted an ascertainable loss for purposes of CUTPA.

This conclusion is also consistent with case law, from which a clear majority has emerged. Although our appellate courts have not yet had the opportunity to address whether emotional distress, by itself, constitutes an ascertainable loss under CUTPA, our Superior Court has addressed the issue on multiple occasions. As noted by the court in *Builes* v. *Kashinevsky*, Superior Court, judicial district of Fairfield, Docket No. CV-09-5022520S (September 15, 2009) (48 Conn. L. Rptr. 538): "The few Superior Court cases on this issue have determined that emotional distress or injury is not an ascertainable loss capable of compensation. *Printed Circuits Unlimited, Inc.* v. *Sensor Switch, Inc.*, Superior Court, judicial district of Fairfield, Docket No. CV-91-0288532 (October 23, 1996) (*Stevens, J.*); *Ross* v. *Company Store*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-91-0115710 (October 1, 1991) (*Ryan, J.*) (6 C.S.C.R. 942) [5 Conn. L. Rptr. 62]; *Murphy* v. *McNamara*, 36 Conn. Supp. 183, 195–96, 416 A.2d 170 (1979); *Barney* v. *Downer Funeral Home, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-99-0175648 (August 13, 2001) (*Hon. William B. Lewis*, judge trial referee); see also *Rees* v. *Flaherty*, Superior Court, judicial district of Tolland, Docket No. CV-01-0077316 (June 7, 2002) (*Scholl, J.*) (32 Conn. L. Rptr. 292, 293) (holding that claims for emotional distress . . . [are] . . . types of damages [that] do not appear to come within the meaning of ascertainable loss or actual damages as contemplated by the CUTPA statute); *Lane* v. *First Union National Bank*, Superior Court, judicial district of New Haven, Docket No. CV-01-0446552 (April 19, 2002) (*Thompson, J.*) (holding that emotional distress is not an ascertainable loss under CUTPA); *Jaworski* v. *Anderson*, Superior Court, judicial district of Hartford, Docket No. CV-94-0537265 (August 7, 2001) (*Schuman, J.*) (holding that emotional distress damages are not available under CUTPA). This view has most recently been adopted in *Deutsche Bank* v. *Lichtenfels*, Superior Court, judicial district of New Haven, Docket No. CV-04-4003402 (June 17, 2009) (*Corradino, J.*) [48 Conn. L. Rptr. 133], where the court held that . . . ascertainable loss [under CUTPA] . . . does not appear to envisage a recovery for emotional distress." (Internal quotation marks omitted.)[3]

The Superior Court decisions since *Builes*, and the cases cited therein, have continued to hold that emotional distress is not sufficient for purposes of CUTPA. *Deutsche Bank National Trust Co.* v. *Belizaire*, Superior Court, judicial district of Stamford–Norwalk,

Docket No. CV-06-5002704S (July 13, 2011) ("[t]rial courts have uniformly dismissed or stricken CUTPA claims on the basis that emotional distress by itself is not an ascertainable loss sufficient to support a CUTPA claim"); *Pratt* v. *University Accounting Services, LLC*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. CV-10-116011594S (August 28, 2012) (same); *Green-Pinto* v. *OR & L Facility Services, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-12-6027983 (December 24, 2012) (same); *Wilton Meadows Ltd. Partnership* v. *Coratolo*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-09-5009680S (July 28, 2010) (same).

After a full review of the case law and the facts presented in this case, we conclude that the plaintiffs' claim of emotional distress does not constitute an ascertainable loss of money or property for purposes of CUTPA. The court, therefore, did not err in granting the defendant's motion for summary judgment.[4]

The judgment is affirmed. In this opinion the other judges concurred.

[1] Santina Di Teresi passed away during the pendency of the case. Thereafter, Virginia Di Teresi and Emmanuel J. Di Teresi, as representatives of her estate, were substituted as plaintiffs.

[2] The defendant Stamford Health System, Inc., is the parent corporation of the defendant Stamford Hospital. We refer to these entities respectively as the defendant and the hospital. Robert Mayes also was named as a defendant, but he is not a party to this appeal.

[3] We recognize that some of the older Superior Court decisions predating *Builes* have found claims of emotional distress sufficient to meet the ascertainable loss requirements of CUTPA. See, e.g., *Doe* v. *Bradley Memorial Hospital*, Superior Court, judicial district of New Britain, Docket No. CV-01-0509999 (July 24, 2003) (summary judgment denied because the "plaintiff . . . alleged that the hospital's act of providing information to the police did harm the plaintiff in that the hospital's actions caused substantial injury to the plaintiff and were immoral, oppressive and unscrupulous"); *Covino* v. *Guillory*, Superior Court, judicial district of New London, Docket No. CV-98-0163041S (March 14, 2002) (emotional distress claim sufficient for CUTPA claim); *Roemmele* v. *Law Offices of John Haymond*, Superior Court, judicial district of New London, Docket No. 547182 (May 4, 1999) (24 Conn. L. Rptr. 441) ("[t]he plaintiff has alleged facts [of emotional distress] concerning entrepreneurial or commercial aspects of the defendant's practice of law which may constitute a violation of CUTPA"). We find these decisions to be in the minority and not persuasive in the present matter.

[4] In light of our conclusion, we need not address the defendant's alternative argument of collateral estoppel.