******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## FRANK CHARLES WHITE *v.* FCW LAW OFFICES ET AL.
### (AC 46709)

Alvord, Elgo and Suarez, Js.

*Syllabus*

The plaintiff appealed from the judgment of the trial court rendered in his favor, following a hearing in damages in connection with his action seeking damages for identity theft pursuant to statute (§ 52-571h) and for a violation of the Connecticut Unfair Trade Practices Act (§ 42-110a et seq.). The plaintiff claimed that the trial court improperly failed to award him treble damages in light of mandatory language in § 52-571h (b) following the default judgment rendered against the defendants. *Held*:

The plaintiff was entitled to an award of treble damages under § 52-571h, but he was not entitled to recover those damages in addition to the damages that the trial court awarded under CUTPA.

The trial court's award of damages under CUTPA was vacated, as that award was based on the same transaction, occurrence or event on which the plaintiff based his action for damages resulting from identity theft under § 52-571h, and, thus, that award violated the principle that the plaintiff is entitled to recover only once for the losses he sustained.

Argued April 10—officially released September 17, 2024

*Procedural History*

Action to recover damages for, inter alia, identity theft, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the named defendant was defaulted for failure to appear; thereafter, the court, *Swienton, J.*, granted the plaintiff's motion to bifurcate the trial; subsequently, the case was tried to the court, *Swienton, J.*; judgment for the plaintiff, from which the plaintiff appealed to this court. *Reversed in part*; *vacated in part*; *judgment directed in part*.

*Frank Charles White*, self-represented, the appellant (plaintiff).

*Opinion*

SUAREZ, J. The plaintiff, Frank Charles White, appeals from the judgment of the trial court rendered in his favor against the defendants, FCW Law Offices and two John Does,[1] following a hearing in damages on his civil action seeking damages for identity theft pursuant to General Statutes § 52-571h (b) and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On appeal, the plaintiff claims that the court failed to comply with § 52-571h (b) when it did not award him treble damages under § 52-571h.[2] We reverse in part the judgment of the trial court.

The following facts, as found by the court in its June 28, 2023 memorandum of decision, and procedural history are relevant to our resolution of the plaintiff's claim. "The plaintiff is a practicing, licensed attorney in the state of Connecticut with a valid juris number. The defendants perpetrated a fraud and identity theft by using the plaintiff's juris number, establishing a website with a Connecticut address, and using the plaintiff's name to convince members of the public in the United States and Canada to sell their Mexican time-share[s], and to provide the defendants with money based on the false representations that the funds [would] be refunded at a real estate closing which the defendants never intended to take place.

"The plaintiff became aware of this when his mother received a phone call in February, 2019, after she had been contacted by someone looking for the plaintiff. After learning that this person from Lansing, Michigan,

---

[1] FCW Law Offices is also known as FCW Law, and Frank Charles White Law Offices.

[2] In his appellate brief, the plaintiff also claims that the trial court erred in denying his motion for additur, a motion that is properly filed following a jury trial. See Practice Book § 16-35. The plaintiff withdrew this claim during oral argument before this court.

was a potential victim of a scam, the plaintiff immediately contacted the Statewide Grievance Committee. He also called the number on the fraudulent website and spoke to someone who made threats against him, stating 'calm down and you won't get hurt.'

"The plaintiff did whatever he could to prevent the fraud from continuing. He was instrumental in causing the website to be taken down twice—it has since been put back on the Internet. On March 9, 2019, he made complaints to the Office of the Chief State's Attorney . . . to the Department of Consumer Protection, and to the Federal Bureau of Investigation [(FBI)]. He heard nothing from the state's attorney's office nor the Department of Consumer Protection until he was notified on May 14, 2019, by the Office of the Attorney General that a complaint had been filed *against him* regarding a victim of the fraud and scam.

"On May 18, 2019, the plaintiff filed a complaint with the Federal Trade Commission . . . which set forth the agencies he notified. At that point, he had been contacted by four potential victims, and learned of a fifth victim who lost over $10,000. No one from the state's attorney's office, FBI, [Internal Revenue Service], or the Office of the Attorney General had contacted him regarding his notifications." (Emphasis in original.)

The plaintiff commenced this action against the defendants in June, 2020. In his operative complaint, the plaintiff brought four counts against the defendants. In count one, the plaintiff brought a cause of action, sounding in quo warranto,[3] to remove the defendants

---

[3] "A complaint in the nature of quo warranto may be brought [w]hen any person . . . usurps the exercise of any office . . . [and] the Superior Court may proceed . . . to punish such person . . . for such usurpation, according to the course of the common law and may proceed therein and render judgment according to the course of the common law. General Statutes § 52-491. A quo warranto proceeding under the common law lies only to test the [defendants'] right to hold office de jure. . . . A successful action

from public office as officers of the court and as commissioners of the Superior Court. In count two, the plaintiff brought a quo warranto cause of action to remove the defendants from the private office of "an unincorporated, professional corporation and/or partnership practicing law under the names FCW Law Offices, FCW Law, and Frank Charles White Law Offices." In count three, the plaintiff brought a cause of action for identity theft in violation of General Statutes §§ 53a-129a[4] and 52-571h.[5] Specifically, the plaintiff alleged that the defendants intentionally made use of his name and juris number without his authorization, and used that information to obtain or attempt to obtain money, credit, goods, services, or property without his consent. In count four, the plaintiff alleged a CUTPA violation based upon the same underlying conduct at issue in the previous counts, namely, the theft of his identity. In the plaintiff's prayer for relief, he requested the following remedies: "[w]rit of quo warranto ordering the removal of the defendants from the public offices of officer of the court and commissioner of the Superior Court . . . [w]rit of quo warranto ordering the removal of the defendants from the private office

in quo warranto ousts the wrongful office holder . . . . The . . . [defendants] or respondent[s] in quo warranto proceedings are those charged with exercising the particular office or franchise without lawful right. Stated otherwise, a writ of quo warranto must be directed toward the objectionable person holding an office exercising its functions in his or her individual capacity." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Demarest* v. *Fire Dept.*, 76 Conn. App. 24, 28–29, 817 A.2d 1285 (2003).

[4] General Statutes § 53a-129a (a), which defines identity theft, provides: "A person commits identity theft when such person knowingly uses personal identifying information of another to obtain or attempt to obtain money, credit, goods, services, property or medical information without the consent of such other person."

[5] Section 52-571h authorizes a cause of action for damages resulting from identity theft. References in the plaintiff's complaint to "[General Statutes] § 51-571h" appear to be a scrivener's error. We consider such references to refer to § 52-571h.

of the practice of law in the state of Connecticut . . . [c]osts of litigation, including attorney's fees as exemplary damages . . . [*d*]*amages pursuant to* . . . [*§*] *42-110[a] et seq. and [§ 52-571h]* . . . [c]osts of litigation . . . [i]nterest; and . . . [s]uch other legal or equitable relief as the court deems proper." (Emphasis altered.)

On February 16, 2021, the plaintiff filed a motion for default for failure to appear, which the clerk granted on March 16, 2021. On August 8, 2022, the plaintiff filed a request for a hearing in damages and thereafter moved to bifurcate the hearing in damages. Specifically, the plaintiff sought to bifurcate the hearing on counts one and two of his complaint, which sought nonmonetary relief, from the hearing on the identity theft and CUTPA counts. The court, *Swienton, J.*, granted those requests.

In November, 2022, the court held the first phase of the hearing in damages on the plaintiff's claim for nonmonetary relief. On November 29, 2022, the plaintiff filed a motion for partial judgment on default, which the court granted that day. On June 27, 2023, the court held the second phase of the hearing in damages on the plaintiff's claim for monetary relief. The court heard testimony from the plaintiff and Garritt Kelly, an investigator for the statewide bar counsel. The plaintiff also submitted multiple exhibits, including an affidavit from a victim of the defendants' fraud, in support of his request for monetary damages.

On June 30, 2023, the court issued a memorandum of decision with respect to the identity theft and CUTPA counts of the plaintiff's complaint. The court first concluded that the plaintiff proved his entitlement to damages pursuant to § 52-571h based upon his allegation of identity theft under § 53a-129a.[6] The court further

---

[6] References in the court's June 28, 2023 memorandum of decision to "General Statutes § 51-571h" appear to be a scrivener's error. We consider such references to refer to § 52-571h. See also footnote 5 of this opinion.

concluded that the plaintiff proved his entitlement to damages under CUTPA. In its discussion of damages, the court stated that "[t]he plaintiff is seeking compensatory damages, punitive damages under CUTPA, attorney's fees and costs. Although the plaintiff has not suffered any actual pecuniary loss, there is no question that he has suffered emotional distress due to the actions of these persons behind this fraud. He did not seek any professional medical/psychological diagnosis, treatment, or medication. However, he credibly testified as to the toll it has taken on him." (Footnote omitted.)

The court rendered judgment in favor of the plaintiff on counts three and four of his complaint and awarded damages as follows: "Damages under . . . [§ 52-571h]: (1) Compensatory damages: $150,000, (2) Attorney's fees: $20,000, (3) Costs: $1329.21. Damages under CUTPA: (1) Punitive damages: $300,000. Total damages: $471,329.21." This appeal followed.

On appeal, the plaintiff claims that the court improperly failed to award him treble damages in light of mandatory language in § 52-571h (b), following the default judgment rendered against the named defendant on the third count of the complaint. Specifically, the plaintiff asserts that, pursuant to that statute, he was entitled to the greater of either $1000 or treble the amount of the $150,000 that the court had awarded to him as compensatory damages, which would have resulted in an additional award of $300,000 under § 52-571h (b). The plaintiff thus argues that he was entitled to a total of $471,329.21 in damages, costs, and attorney's fees under § 52-571h on the third count of his complaint.[7] We agree with the plaintiff but we disagree with him to the extent that he claims that he was entitled to these

[7] The plaintiff clarified during oral argument before this court that the calculation of damages that he set forth in his appellate brief was inaccurate, as he was entitled to an additional $300,000 in damages under § 52-571h.

damages under § 52-571h *in addition to* the damages that the court awarded him under CUTPA.[8]

The following standard of review and legal principles are relevant to our resolution of the plaintiff's claim. "Our standard of review applicable to challenges to damage awards is well settled. . . . [T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . [If], however, a damages award is challenged on the basis of a question of law, our review [of that question] is plenary." (Internal quotation marks omitted.) *AAA Advantage Carting & Demolition Service, LLC* v. *Capone*, 221 Conn. App. 256, 285, 301 A.3d 1111, cert. denied, 348 Conn. 924, 304 A.3d 442 (2023), and cert. denied, 348 Conn. 924, 304 A.3d 442 (2023).

"The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. . . . As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it. . . . Effect must be given to that which is clearly implied as well as to that

---

[8] In his principal appellate brief, the plaintiff did not specifically address the issue of whether it was legally appropriate for him to recover under both § 52-571h and CUTPA. On August 8, 2024, following oral argument in this appeal, this court, sua sponte, ordered the plaintiff to file a supplemental brief with this court "addressing whether an award of treble damages under . . . § 52-571h and an award of punitive damages under CUTPA in the present action would violate the rule precluding double recovery because both damage awards would be based upon the same transaction, occurrence or event. See *AAA Advantage Carting & Demolition Service, LLC* v. *Capone*, 221 Conn. App. 256, 288–89, [301 A.3d 1111] cert. denied, 348 Conn. 924 [304 A.3d 442 (2023), and cert. denied, 348 Conn. 924, 304 A.3d 442 (2023)]." On August 19, 2024, the plaintiff filed a supplemental brief with this court in which he argues that a recovery under both causes of action is legally appropriate. We have considered the arguments and authorities set forth in the plaintiff's supplemental brief but conclude, in light of the causes of action at issue in this appeal, that they are not persuasive.

which is expressed. . . . If [f]aced with . . . an ambiguity, we construe the court's decision to support, rather than to undermine, its judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances. . . . We review such questions of law de novo. . . . Additionally, our appellate courts do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Citations omitted; internal quotation marks omitted.) *Rogan* v. *Rungee*, 165 Conn. App. 209, 223, 140 A.3d 979 (2016).

Section 52-571h (b) provides in relevant part: "In any civil action brought under this section in which the plaintiff prevails, the court shall award the greater of one thousand dollars or treble damages, together with costs and a reasonable attorney's fee. Damages shall include, but need not be limited to, documented lost wages and any financial loss suffered by the plaintiff as a result of identity theft . . . . The court may award other remedies provided by law, including, but not limited to, the costs of providing not less than two years of commercially available identity theft monitoring and protection for such individual." We agree with the plaintiff that the court violated the mandatory directive of this statute by failing to award him treble damages on the third count of the complaint. We are mindful that, "[f]or a court to properly award treble damages under a statute authorizing such damages, the fact finder must [find] for the [party requesting the treble damages] under the statutory cause of action authorizing these extraordinary damages, and not for any other alleged cause of action." (Internal quotation marks omitted.) *Rogan* v. *Rungee*, supra, 165 Conn. App. 224. In the

present case, the court plainly found for the plaintiff on the identity theft count of his complaint, thereby entitling him to treble damages pursuant to § 52-571h (b). At the same time, the plaintiff correctly recognizes that, in addition to the court's award of damages under § 52-571h, the court awarded him $300,000 on the fourth count of his complaint in connection with an alternative theory of liability under CUTPA. In describing the relief sought in connection with this appeal, the plaintiff urges us to reverse the judgment rendered under § 52-571h but asks that we affirm the judgment of the trial court in all other respects. In our evaluation of what remedy, if any, is proper in light of the court's failure to award treble damages under § 52-571h, we are guided by the fundamental principle that a plaintiff is entitled to be compensated only once for his injury.

As this court has observed, "[t]he rule precluding double recovery is a simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury. . . . Connecticut courts consistently have upheld and endorsed the principle that a litigant may recover just damages for the same loss only once. The social policy behind this concept is that it is a waste of society's economic resources to do more than compensate an injured party for a loss and, therefore, that the judicial machinery should not be engaged in shifting a loss in order to create such an economic waste. . . . Duplicate recoveries must not be awarded for the same underlying loss under different legal theories. . . . Although a plaintiff is entitled to allege alternative theories of liability in separate claims, he is not entitled to recover twice for harm growing out of the same transaction, occurrence or event." (Citations omitted; internal quotation marks omitted.) *AAA Advantage Carting & Demolition Service, LLC* v. *Capone*, supra, 221 Conn. App. 288–89.

In light of the foregoing, we conclude that the proper remedy is to reverse the judgment of the court awarding compensatory damages of $150,000 pursuant to § 52-571h and to direct the court, on remand, to award treble damages, exclusive of its unchallenged award of costs and attorney's fees, in the amount of $450,000 on the third count of the plaintiff's complaint. In light of that relief, we are compelled to further conclude, as a matter of law, that the court's award of damages under CUTPA cannot stand, as that action was based upon the same transaction, occurrence or event on which the plaintiff based his action for damages resulting from identity theft under § 52-571h. The court's award of damages under CUTPA thus violates the principle that the plaintiff is entitled to recover only once for the losses he sustained in connection with that transaction, occurrence or event. We therefore reverse the judgment awarding the plaintiff $300,000 in damages on the CUTPA count of the complaint.[9]

---

[9] We conclude that the court's award of damages under CUTPA was improper because it violated the rule against double recovery and thus must be vacated as a matter of law on this ground. We nonetheless are troubled by the court's award of damages under CUTPA for other reasons that, although not the basis for our decision, are worth noting to avoid any possible ambiguity that could result from the judgment rendered in this case.

It is well established that, "[t]o prevail on a CUTPA claim, the plaintiff must prove, pursuant to General Statutes § 42-110b (a), that the [defendants] engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce and that as a result of the use of the act or practice prohibited under § 42-110b (a), the plaintiff suffered an ascertainable loss of money or property. . . . The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation.

"Our Supreme Court has further defined the ascertainable loss requirement of CUTPA, stating: An ascertainable loss is a loss that is capable of being discovered, observed or established. . . . The term loss necessarily encompasses a broader meaning than the term damage, and has been held synonymous with deprivation, detriment and injury. . . . To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount. . . . [A] loss is ascertainable if it is measurable

The judgment is reversed with respect to the award of compensatory damages under § 52-571h and the award of damages under CUTPA and the case is remanded with direction to vacate those awards and to award the plaintiff $450,000 in damages under § 52-571h, exclusive of the award of attorney's fees and costs; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

even though the precise amount of the loss is not known." (Citations omitted; internal quotation marks omitted.) *Di Teresi* v. *Stamford Health System, Inc.*, 149 Conn. App. 502, 508, 88 A.3d 1280 (2014). This court has stated that "emotional distress does not constitute an ascertainable loss of money or property for purposes of CUTPA." Id., 512.

In the present case, the court appears to have based its award of damages exclusively on a finding that the plaintiff suffered emotional distress, not a finding that he suffered an ascertainable loss of money or property. The court explicitly stated that, "[a]lthough the plaintiff has *not suffered any actual pecuniary loss*, there is no question that he has suffered emotional distress due to the actions of these persons behind this fraud." (Emphasis added.) To be clear, under Connecticut law, a CUTPA violation cannot be predicated on emotional distress alone.