******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MCCARTER & ENGLISH, LLP *v.* JARROW FORMULAS, INC.
## (SC 21013)

McDonald, D'Auria, Mullins, Ecker, Alexander and Dannehy, Js.*

*Syllabus*

The plaintiff law firm sought to recover from the defendant, a former client, for, inter alia, breach of contract in federal court. The United States District Court for the District of Connecticut certified to this court a question of law concerning whether a law firm can recover common-law punitive damages from a former client for his or her wilful and malicious breach of an agreement to compensate the law firm for legal services. *Held*:

This court concluded that, in Connecticut, a law firm may not recover common-law punitive damages for its client's breach of contract unless it pleads and proves the existence of an independent tort for which punitive damages may be recoverable.

Connecticut appellate courts have followed the general rule that punitive damages are not ordinarily recoverable for a breach of contract claim, and the Appellate Court has allowed punitive damages in connection with such claims only in the insurance and surety contexts.

After consideration of the applicable Restatements of Contracts and Torts, and the case law of other jurisdictions, this court concluded that the majority rule, which permits the recovery of punitive damages for breach of contract only when the conduct causing the breach is also a tort for which punitive damages are recoverable, strikes the appropriate balance among the competing policy interests and is strongly supported by the different purposes for which breach of contract damages and punitive damages are awarded.

This court declined to adopt a rule proposed by the plaintiff and the amicus curiae that would have broadly permitted the recovery of common-law punitive damages when the conduct causing the breach of contract was wilful, malicious, or reckless, regardless of whether the conduct constituted an independent tort, the court having concluded that the majority rule that it adopted afforded adequate protection for plaintiffs and offered clear guidance concerning the circumstances under which punitive damages may be recovered.

Argued September 19, 2024—officially released February 4, 2025

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the United States District Court for the District of Connecticut, where the court, *Shea, J.*, certified a question of law to this court concerning whether a law firm can recover common-law punitive damages for its client's wilful and malicious breach of an agreement to compensate the law firm for legal services.

*Karen L. Dowd*, with whom were *Louis R. Pepe*, *Michael A. Lanza* and, on the brief, *James G. Green, Jr.*, *James A. Budinetz* and *David W. Case*, for the appellant (plaintiff).

*Proloy K. Das*, for the appellee (defendant).

*Matthew S. Blumenthal* and *James J. Healy* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

McDONALD, J. This case, which comes to us upon our acceptance of a certified question from the United States District Court for the District of Connecticut, requires us to consider whether a law firm can recover punitive damages from a former client for the client's breach of contract. We have long recognized that the principal purpose of remedies in a breach of contract action is to provide compensation for loss. See, e.g., *Vines* v. *Orchard Hills, Inc.*, 181 Conn. 501, 506, 435 A.2d 1022 (1980). As a result, damages for breach of contract are traditionally limited to compensatory damages. See, e.g., id., 506–507. Connecticut is unique among the states because common-law punitive damages are limited to litigation expenses that may also serve to compensate the plaintiff. See, e.g., *Berry* v. *Loiseau*, 223 Conn. 786, 827, 614 A.2d 414 (1992). But we have also recognized that, "in . . . light of the

increasing costs of litigation," punitive damages can also "punish and deter wrongful conduct." Id. Consequently, punitive damages are often in tension with the purpose of damages in contract law because, "[e]ven if the breach [of contract] is deliberate, it is not necessarily blameworthy." *Patton* v. *Mid-Continent Systems, Inc.*, 841 F.2d 742, 750 (7th Cir. 1988). In light of this tension, we tread carefully when determining whether to broaden the scope of a client's potential liability to its attorney when that attorney brings a breach of contract action against the client. After consideration of the common law of this state and other jurisdictions, and the relevant policy implications, we agree with, and adopt, the rule followed by the majority of jurisdictions and the Restatements: a law firm may not recover common-law punitive damages for its client's breach of contract unless it pleads and proves the existence of an independent tort for which punitive damages are available.

The following facts and procedural history, as provided by the District Court in its certification request and supplemented by the record, are relevant to our disposition of the certified question. The plaintiff, McCarter & English, LLP, was engaged by the defendant, Jarrow Formulas, Inc., to represent Jarrow in a contentious Kentucky action brought against Jarrow by Caudill Seed & Warehouse Company.[1] Shortly before

---

[1] There was no written retainer agreement entered into between Jarrow and McCarter with respect to the Kentucky litigation. Prior to the Kentucky litigation, Mark D. Giarratana, an attorney with McCarter, had been providing legal services to Jarrow over the past twenty-three years while working at three different law firms. The only written engagement letter or fee agreement that existed between Jarrow and Giarratana was a letter from December, 1996, between Jarrow and the law firm of McCormick, Paulding & Huber, LLP, Giarratana's employer at the time. The District Court found, however, that there was no dispute of material fact that " 'Jarrow contracted with McCarter for representation in the Kentucky litigation' " based on the parties' course of dealing over the past twenty-three years.

trial of the case in Kentucky, McCarter offered Jarrow a discount on its unpaid invoices in " 'exchange for payment of all . . . outstanding invoices,' which totaled approximately $1.3 million." Jarrow took the discount but paid only one half of the amount owed. Following that trial, in June, 2019, the jury returned a verdict for Caudill for nearly $2.5 million.

On the night of the verdict, Jarrow decided to terminate its engagement with McCarter but did not inform McCarter of that decision until several weeks later and continued to ask McCarter to perform legal work. The evening after the verdict, Jarrow's chairman and president, Jarrow Rogovin, " 'butt dial[ed]' " Mark D. Giarratana, an attorney with McCarter, "and accidentally left a profanity-laden voicemail [in which] he criticized McCarter's work during the trial and accused it of malpractice." In that voicemail, Rogovin stated: " 'As far as I'm concerned, [McCarter] can pay the damages.' " Following McCarter's termination, Jarrow "refused to pay McCarter's last five monthly invoices for legal services rendered in the Kentucky litigation."

In July, 2019, McCarter brought an action against Jarrow in the United States District Court for the District of Connecticut for, among other things, breach of contract, claiming more than $2 million in outstanding legal fees and expenses. Jarrow asserted numerous counterclaims against McCarter, including breach of fiduciary duty, negligent and intentional misrepresentation, unfair trade practices, and legal malpractice. Based on information it obtained in discovery, McCarter filed a motion to amend its complaint to add a claim for punitive damages for wilful and wanton breach of contract. The District Court granted McCarter's motion, concluding that, "[w]hen all reasonable inferences are drawn in [McCarter's] favor . . . the amended complaint pleads enough facts to set forth a plausible claim for breach [of] contract founded on tortious conduct, allow[ing]

the award of punitive damages." (Internal quotation marks omitted.)

Both parties moved for summary judgment. The District Court granted in part and denied in part McCarter's motion for summary judgment on the breach of contract claim and the malpractice counterclaim. The court denied McCarter's motion on all other claims and denied Jarrow's motion for summary judgment in total. With respect to the breach of contract claim, the court concluded, on the basis of the parties' course of dealing in their attorney-client relationship over the past twenty-three years, that there was no dispute of material fact that " 'Jarrow contracted with McCarter for representation in the Kentucky litigation . . . .' " See footnote 1 of this opinion. The court further concluded that Jarrow breached the contract by failing to pay five outstanding McCarter invoices and to reimburse McCarter for its expenses. Consequently, the court awarded McCarter damages based on an hourly rate that was listed on the first invoice. The District Court concluded, however, that there was an issue of material fact as to whether Jarrow agreed to pay a higher hourly rate that McCarter started billing after the Kentucky litigation began. The court also found that there were genuine issues of material fact regarding Jarrow's legal malpractice counterclaim against McCarter. At the time of trial, only one allegation of malpractice remained.

Before trial, the parties stipulated that the jury would determine whether either party was entitled to punitive damages and that the court would determine the amount of those damages. However, both parties reserved their right to argue to the court that the opposing party is not entitled to punitive damages as a matter of law. The court instructed the jury that punitive damages could be awarded if " 'the other party's conduct intended to violate—or showed reckless indifference to—the rights of the first party.' " Following a trial, the jury

returned a verdict in favor of McCarter on all the claims and counterclaims, and awarded more than $1 million in compensatory damages, in addition to the approximately $980,000 previously awarded by the District Court in granting in part McCarter's motion for summary judgment. The jury also determined that Jarrow's conduct in breaching its contract with McCarter was wilful and malicious.

During trial, Jarrow moved for judgment as a matter of law, arguing that "no punitive damages could be awarded for McCarter's breach of contract claim because Connecticut law does not '[recognize] bad faith breach of contract except when there is a strong public policy involved.'" The District Court declined to decide the question, explaining that, "[b]ecause Connecticut law is unsettled on this question, resolving this question requires weighing competing public policy concerns, and other states have adopted several different rules; I will certify this question to the Connecticut Supreme Court." As a result, the District Court denied without prejudice McCarter's motion for punitive damages. The court noted that McCarter could renew its motion for punitive damages if this court determines that punitive damages are available for wilful and malicious breach of contract. Should this court so conclude, the District Court found that "McCarter reasonably incurred $3,602,462.99 in litigation expenses" and would be entitled to that amount in punitive damages.

The District Court thereafter certified the following question to this court: "Can a law firm recover common-law punitive damages, i.e., litigation costs including attorney's fees, for its client's wilful and malicious breach of an agreement to compensate the law firm for legal services?" *McCarter & English, LLP* v. *Jarrow Formulas, Inc.*, Docket No. 3:19-cv-01124 (MPS), 2024 WL 754415, *12 (D. Conn. February 23, 2024).

Before this court, McCarter argues that we have recognized that common-law punitive damages are available for breach of contract actions in which the breaching party acted wilfully, maliciously, or with reckless disregard of the rights of others. In support of this contention, McCarter points to a decision from this court in *Triangle Sheet Metal Works, Inc.* v. *Silver*, 154 Conn. 116, 222 A.2d 220 (1966), and a decision from the Appellate Court in *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 514 A.2d 766 (*L. F. Pace*), cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). McCarter contends that these cases establish that punitive damages may be awarded for a wilful or malicious breach of contract. McCarter also argues that "[p]ermitting common-law punitive damages for tortious breach of contract is consistent with Connecticut's long-standing law and policy."

Jarrow disagrees and contends that Connecticut "case law establishes that punitive damages are not available at common law for breach of contract actions." Jarrow acknowledges that, in *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, supra, 9 Conn. App. 48, the Appellate Court allowed for the possibility that punitive damages could be awarded for a breach of contract claim when the breach is founded on tortious conduct. But Jarrow contends that, in *Barry* v. *Posi-Seal International, Inc.*, 40 Conn. App. 577, 672 A.2d 514, cert. denied, 237 Conn. 917, 676 A.2d 1373 (1996), the Appellate Court clarified that its ruling in *L. F. Pace* should not be extended beyond the insurance context, at least when there is no allegation of a violation of an important public policy. Jarrow also contends that, if we were to recognize punitive damages for a breach of contract, we would be impermissibly rewriting the contract. Such a recognition, Jarrow contends, would also violate the economic loss doctrine.[2] Jarrow also argues that award-

---

[2] "The economic loss doctrine bars negligence claims for commercial losses arising out of the defective performance of contracts . . . . The

ing punitive damages to an attorney trying to recover attorney's fees would be inconsistent with rule 1.5 of the Rules of Professional Conduct. Finally, Jarrow argues that "judicial recognition of an attorney's fees award would violate the separation of powers doctrine."

Whether a law firm can recover common-law punitive damages for its client's wilful and malicious breach of contract is a question of law over which we exercise plenary review. See, e.g., *Ulbrich* v. *Groth*, 310 Conn. 375, 394, 78 A.3d 76 (2013).

We begin with a survey of case law from this court and the Appellate Court to determine whether, and to what extent, appellate courts in Connecticut recognize common-law punitive damages for breach of contract. We start with the well settled principle that, "[i]n an action for breach of contract, the general rule is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that he would have been in had the contract been performed." *Lar-Rob Bus Corp.* v. *Fairfield*, 170 Conn. 397, 404–405, 365 A.2d 1086 (1976). These damages, which are measured or calculated differently depending on the particular context, are compensatory in nature. See, e.g., *Vines* v. *Orchard Hills, Inc.*, supra, 181 Conn. 506–507.

The only case in which this court has mentioned punitive damages in a breach of contract action is in *Triangle Sheet Metal Works, Inc.* v. *Silver*, supra, 154 Conn. 116. In that case, the plaintiffs accused two of their former employees of disclosing and utilizing trade secrets in violation of express or implied confidentiality

rationale for the doctrine is that, because parties to a contract are free to allocate the risks, insure against potential losses, and adjust the contract price as they [deem] most wise . . . courts will not extricate them from their bargain and substitute a common-law tort remedy." (Citations omitted; internal quotation marks omitted.) *Ulbrich* v. *Groth*, supra, 310 Conn. 375, 390 n.14, 78 A.3d 76 (2013).

agreements and their fiduciary duties. See id., 118–19, 125. Relevant to the present case, in *Triangle Sheet Metal Works*, the trial court found in favor of the plaintiffs as to counts three and four of their complaint, which this court treated as breach of contract claims, and awarded the plaintiffs punitive damages. See id., 125, 127. The defendants appealed, claiming that the trial court erred in awarding punitive damages. Id., 125. As to that issue, this court explained that "[*p*]*unitive damages are not ordinarily recoverable for breach of contract*. [See, e.g., 1 Restatement, Contracts § 342, p. 561 (1932); 5 A. Corbin, Contracts (1964) § 1077, p. 437; C. McCormick, Handbook on the Law of Damages (1935) § 81, p. 286]." (Emphasis added.) *Triangle Sheet Metal Works*, *Inc.* v. *Silver*, supra, 127. This is so, we reasoned, because "punitive or exemplary damages are assessed by way of punishment, and the motivating basis does not usually arise as a result of the ordinary private contract relationship. *The few classes of cases in which such damages have been allowed contain elements which bring them within the field of tort.* It is, of course, settled law that, in certain cases of tort, punitiveor exemplary damages may properly be awarded. In Connecticut, however, recovery is limited to an amount which will serve to compensate the plaintiff to the extent of his expenses of litigation less taxable costs." (Emphasis added.) Id. In tort cases, this court explained, "[t]he flavor of the basic requirement to justify an award of punitive or exemplary damages has been repeatedly described in terms of wanton and malicious injury, evil motive and violence. . . . The Restatement [of Torts] declares that punitive damages may be awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." (Citations omitted; internal quotation marks omitted.) Id., 128. This court then reversed the trial court's award of punitive damages because counts three

and four in the complaint did not contain "any allegation of a motivating intent or design, actual or constructive, on the part of the defendants to harm the plaintiffs by their conduct," and the record did not support a finding of malicious or wanton conduct. Id. Nothing in *Triangle Sheet Metal Works*, however, countenanced any rule, broad or specific, for the recovery of punitive damages for breach of contract claims. The fact that the two counts that were at issue in that case did not allege such motivating intent or design on the part of the defendants ended this court's inquiry into the matter. Indeed, even for punitive damages in connection with a tort claim, a plaintiff must allege some reckless or intentional and wanton conduct by the defendant. See, e.g., id., 127–28. The fact that the plaintiffs in that case failed to allege any such motivating intent or design doomed their claims. This court, therefore, did not need to decide whether punitive damages were available for a breach of contract claim because, even if it was assumed that they were available, the plaintiffs' breach of contract claims in that case failed as a matter of law because they did not plead the necessary conduct on the part of the defendants.

In *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, supra, 9 Conn. App. 30, the Appellate Court, relying on *Triangle Sheet Metal Works*, upheld the trial court's award of punitive damages in a breach of contract action. See id., 31–32, 52. The plaintiff alleged that the defendant, a surety company, had breached "an implied contract to act as surety on construction performance and payment bonds." Id., 31. On appeal, the Appellate Court held that "[b]reach of contract founded on tortious conduct may allow the award of punitive damages" but that "there must be an underlying tort or tortious conduct alleged and proved . . . ." Id., 48. The court went on to note that "[e]lements of tort such as wanton or malicious injury or reckless indifference to

the interests of others giving a tortious overtone to a breach of contract action justify an award of punitive or exemplary damages. In [Connecticut] such recovery is limited to an amount which will serve to compensate the plaintiff to the extent of his expenses of litigation less taxable costs." Id. In the context of that case, the Appellate Court concluded that punitive damages were appropriate, reasoning that the "complaint disclose[d] allegations of tortious misconduct by the defendant in its refusal to furnish the payment and performance bonds in violation of its implied contract after issuing the bid bond on the . . . project. In substance, the plaintiff allege[d] therein malicious and wanton misconduct which would justify an award of exemplary or punitive damages in its assertion that the defendant acted outrageously and maliciously toward the plaintiff with wilful disregard for [the] plaintiff's rights under the terms of its implied agreement with the plaintiff, and with the intention of causing [the plaintiff] severe economic and financial loss." (Internal quotation marks omitted.) Id., 48–49.

The Appellate Court next had occasion to consider the award of punitive damages for breach of contract in *Barry* v. *Posi-Seal International, Inc.*, supra, 40 Conn. App. 577. In that case, the plaintiff brought an action against the defendant, his former employer, for wrongful termination, including claims for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent misrepresentation. Id., 579–80; see *Barry* v. *Posi-Seal International, Inc.*, 36 Conn. App. 1, 3, 647 A.2d 1031 (1994) (setting forth facts and procedural history of case), remanded, 235 Conn. 901, 664 A.2d 1124 (1995). The jury found in favor of the plaintiff on all the claims and awarded punitive damages, but the trial court subsequently set aside the verdict on the

plaintiff's tort claims. *Barry* v. *Posi-Seal International, Inc.*, supra, 36 Conn. App. 3–4.

On appeal, the Appellate Court reasoned that a "punitive damages award cannot stand in the absence of a verdict in the plaintiff's favor on a cause of action sounding in tort." *Barry* v. *Posi-Seal International, Inc.*, supra, 40 Conn. App. 584. The court explained that, "[i]n Connecticut, punitive damages are rarely allowed for breach of contract" and that "[t]he single reported case in which an award of punitive damages for breach of contract was upheld [was] *L. F. Pace* . . . ." Id. The court noted that the plaintiff sought to extend the allowance of punitive damages for tortious breach of contract from the insurance context to the employment context. Id., 585. The court explained, however, that "the principles announced in *Triangle Sheet Metal* [*Works*] . . . have been followed only in [regard] to insurance." Id., 588 n.12. On this point, the court cited the California Supreme Court's decision in *Foley* v. *Interactive Data Corp.*, 47 Cal. 3d 654, 765 P.2d 373, 254 Cal. Rptr. 211 (1988). The court was persuaded by *Foley*'s analysis of scholarly commentary, examination of public policy, and its conclusion not to extend the allowance of punitive damages from the insurance context to the employment context. See *Barry* v. *Posi-Seal International, Inc.*, supra, 40 Conn. App. 585–86.

The Appellate Court reasoned that "the role of an employer with respect to its employee differs from the role of a quasi-public insurance company with respect to the customer to whom it sells protection from harm. The employer does not sell protection to its employee in the same way that an insurer sells protection. Instead, the financial security sought by an employee from the employer is not so very different from the financial security sought by one who enters into an ordinary commercial contract." (Internal quotation marks omitted.) Id., 586. The court explained that insurance compa-

nies and insureds share a " 'special relationship' "; id.; in which their interests "are at odds, [as the] payment of a claim benefits the insured and diminishes the resources of the insurer." Id., 587. In contrast, the employer-employee relationship resembles an "ordinary commercial contract" because there are no direct conflicts of interest, given that the employer and employee "share the goal of the employer's retaining in its employ good productive workers." Id. Although the court acknowledged that there may be improper motives for discharging an employee, it reasoned that, "in terms of abstract employment relationships as contrasted with abstract insurance relationships, there is less inherent relevant tension between the interests of employers and employees than exists between that of insurers and insureds. Thus the need to place disincentives on an employer's conduct in addition to those already imposed by law simply does not rise to the same level as that created by the conflicting interests at stake in the insurance context." (Footnote omitted; internal quotation marks omitted.) Id. As a result, the court held that, "at least [when] there is no allegation or proof that the termination of employment is violative of an important public policy, punitive damages cannot be recovered on a claim that a termination constituted a breach of the implied covenant of good faith and fair dealing contained in an employment contract." (Footnote omitted.) Id., 587–88; see also, e.g., *Aurora Loan Services, LLC* v. *Hirsch*, 170 Conn. App. 439, 455, 154 A.3d 1009 (2017) (rejecting plaintiff's claim that it was entitled to punitive damages in breach of contract action because claim was not based on fraud but "for damages based on breach of contract").

As the District Court in the present case noted, in the years following *Barry* v. *Posi-Seal International, Inc.*, supra, 40 Conn. App. 577, both the United States Court of Appeals for the Second Circuit and the Con-

necticut Appellate Court have applied the reasoning in *L. F. Pace* to contract claims brought outside of the insurance context, albeit to conclude that punitive damages were not recoverable. See, e.g., *Edible Arrangements International, Inc.* v. *Chinsammy*, 446 Fed. Appx. 332, 333–34 (2d Cir. 2011) (applying *L. F. Pace* to commercial unjust enrichment claim and concluding that District Court properly denied punitive damages because plaintiff "failed to prove any underlying tortious conduct sufficient to warrant punitive damages"); *Hartford* v. *International Assn. of Firefighters, Local 760*, 49 Conn. App. 805, 806, 816–17, 717 A.2d 258 (applying *L. F. Pace* to breach of collective bargaining agreement, which required city to provide health insurance to members of firefighters' union, and concluding that award of punitive damages was improper because union "made no claim that [the city's breach] was malicious, [wilful] or reckless"), cert. denied, 247 Conn. 920, 722 A.2d 809 (1998). In both cases, the courts concluded that punitive damages were not available in the absence of allegations or proof of tortious conduct. See *Edible Arrangements International, Inc.* v. *Chinsammy*, supra, 333–34; *Hartford* v. *International Assn. of Firefighters, Local 760*, supra, 816–17.

In sum, we glean certain relevant legal principles from the cases from this court and the Appellate Court. The general rule is that punitive damages are not ordinarily recoverable for a breach of contract claim. See, e.g. *Triangle Sheet Metal Works, Inc.* v. *Silver*, supra, 154 Conn. 127. Some of our lower courts have allowed punitive damages for breach of contract claims, but they have largely limited the award of those damages to the insurance and surety contexts, given the special relationship that exists between the insurer and the insured. See, e.g., *Barry* v. *Posi-Seal International, Inc.*, supra, 40 Conn. App. 584–86. The Appellate Court has expressly declined to extend recovery of punitive

damages for breach of contract to the employment context. See id., 587–88. Finally, although they have not discussed it in any detail, some lower courts have referenced the violation of an important public policy as a potential basis for the recovery of punitive damages in contract actions. See, e.g., id. Because this court has not meaningfully addressed the issue of punitive damages as they apply to a breach of contract claim, we think that it is prudent to visit that issue now.

We begin by looking to the law of other jurisdictions to inform our determination of the question before us. See, e.g., *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 754, 12 A.3d 817 (2011). State and federal courts have reached a variety of different conclusions on whether punitive damages may be recovered for breach of contract claims. The various approaches can be grouped into three primary categories. First, the majority of states may fairly be categorized as permitting recovery of punitive damages for breach of contract only when the conduct causing the breach is also a tort for which punitive damages are recoverable.[3] See, e.g.,

---

[3] The majority rule requires a party in a breach of contract action to allege and prove an independent tort before punitive damages become available. Many states that have adopted the majority rule also recognize exceptions that allow parties to recover punitive damages in certain actions involving a " 'special relationship,' " such as "breach of a contract to marry", "breach of a contract by a public service company," "breach of a contract that is also a breach of a fiduciary duty," or "bad faith breach of an insurance contract," without alleging and proving an independent tort. W. Dodge, "The Case for Punitive Damages in Contracts," 48 Duke L.J. 629, 636, 647 (1999). Rather, under one of these exceptions, alleging and proving some reckless, wanton, or malicious conduct would suffice. See, e.g., *Rawlings* v. *Apodaca*, 151 Ariz. 149, 161–63, 726 P.2d 565 (1986); *Wilder* v. *Cody Country Chamber of Commerce*, 868 P.2d 211, 222 (Wyo. 1994). These breach of contract actions are different from those involving an "ordinary commercial contract"; *Barry* v. *Posi-Seal International, Inc.*, supra, 40 Conn. App. 586; because they each pertain to "a relationship with a high degree of dependence and trust and, indeed, each appears to rest at bottom on a fiduciary principle." W. Dodge, supra, 636–37 (1999); see, e.g., *Wagman* v. *Lee*, 457 A.2d 401, 404 (D.C.) ("[a]lthough punitive damages generally are not recoverable for breach of contract . . . this rule is inapplicable if there exists an indepen-

*Kamlar Corp.* v. *Haley,* 224 Va. 699, 706, 299 S.E.2d 514 (1983) ("[m]ost courts faced . . . with the question [of] whether a simple breach of contract, accompanied by ulterior motives, in the absence of an independent tort, justifies an award of punitive damages, have answered the question in the negative"); W. Dodge, "The Case for Punitive Damages in Contracts," 48 Duke L.J. 629, 645 (1999) ("thirty-five [United States] jurisdictions adhere to the traditional rule and require that a contract plaintiff plead and prove the existence of an independent tort in order to recover punitive damages" (footnote omitted)). These states require the plaintiff to allege and prove facts that amount to an independent tort[4] and do not permit recovery for wilful and malicious breach of contract alone. See, e.g., *L.L. Cole & Son, Inc.* v. *Hickman,* 282 Ark. 6, 10, 665 S.W.2d 278 (1984) ("[when] on the facts either an action in contract or one in tort is possible, the plaintiff must specifically plead and prove his cause of action in tort in order to be awarded

---

dent fiduciary relationship between the parties" (citations omitted)), cert. denied, 464 U.S. 849, 104 S. Ct. 158, 78 L. Ed. 2d 145 (1983); *Daniels* v. *Dean,* 253 Mont. 465, 473, 833 P.2d 1078 (1992) ("[t]ort type damages may only be available in contracts [when] a 'special relationship' exists or for traditional contract related torts such as fraud, fraudulent inducement, and tortious interference with a contract"); 22 Am. Jur. 2d 558, Damages § 592 (2013) ("[a]n exception to the rule against punitive damages in [breach of contract] cases has . . . been recognized [when] a special relationship exists between the parties or a duty imposed on the wrongdoer, such as the duty of a bank to its customers or other fiduciary duty").

[4] "Fraud in the negotiation or inducement of a contract may be the most common tort committed in contractual contexts. Conversion of the subject matter of the contract, or of the collateral for a secured loan, is another common example. Less commonly, a defendant breaching one contract sometimes tortiously interferes with another contract." Restatement (Third), Torts, Remedies § 39, comment (h), pp. 103–104 (Tentative Draft No. 3, 2024). Other examples of independent torts that courts have recognized to support punitive damages in breach of contract actions include conversion; forgery; breach of fiduciary duty; tortious interference with a business expectancy; intentional breaches accompanied by wilful acts of violence, malice, or oppressive conduct; fraud or deceit; inducement to breach a contract; and tortious interference with a contract. See, e.g., 22 Am. Jur. 2d 557–58, Damages § 591 (2013) (citing cases).

punitive damages"); *Freeman & Mills, Inc.* v. *Belcher Oil Co.*, 11 Cal. 4th 85, 90–92, 102, 900 P.2d 669, 44 Cal. Rptr. 2d 420 (1995) (overruling prior case law that broadly permitted recovery of punitive damages for "bad faith denial of contract" and adopting rule precluding punitive damages "for noninsurance contract breach [cases], at least in the absence of violation of an independent duty arising from principles of tort law" (internal quotation marks omitted)); *Bhole, Inc.* v. *Shore Investments, Inc.*, 67 A.3d 444, 454 (Del. 2013) ("[p]unitive damages are not recoverable for breach of contract unless the conduct also amounts independently to a tort" (internal quotation marks omitted)); *Francis* v. *Lee Enterprises, Inc.*, 89 Haw. 234, 239, 244, 971 P.2d 707 (1999) (holding that punitive damages are unavailable for breach of contract "in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract," and overruling prior rule that "a wilful, wanton, or reckless breach of any contract—including an employment contract—would support the award of traditional tort damages" (emphasis omitted)); *Morrow* v. *L.A. Goldschmidt Associates, Inc.*, 112 Ill. 2d 87, 98, 492 N.E.2d 181 (1986) (rejecting plaintiffs' "argument that punitive damages should be awarded for certain wilful and wanton breaches of contract, even [when] the breach is not accompanied by an independent tort"); *Miller Brewing Co.* v. *Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 983–84 (Ind. 1993) (rejecting prior dicta that suggested that punitive damages were available for breach of contract and holding that, "in order to recover punitive damages [in such an action] . . . [a] plaintiff must plead and prove the existence of an independent tort" for which "punitive damages may be awarded"); *White* v. *Northwestern Bell Telephone Co.*, 514 N.W.2d 70, 77 (Iowa 1994) ("[p]unitive damages may be awarded for breach of contract . . . upon proof . . . (1) that

the breach also constitutes an intentional tort, and (2) that the breach was committed maliciously"); *Shore* v. *Farmer*, 351 N.C. 166, 170, 522 S.E.2d 73 (1999) ("[P]unitive damages should not be awarded in a claim for breach of contract. . . . [W]hen the breach of contract also constitutes or is accompanied by an identifiable tortious act, the tort committed may be grounds for recovery of punitive damages." (Citations omitted; internal quotation marks omitted.)); *Kamlar Corp.* v. *Haley*, supra, 706–707 (although "[s]ome jurisdictions permit punitive damages [when] the intent of the breaching party is malicious, consisting of an evil or rancorous motive influenced by hate . . . [w]e adhere to the [majority] rule . . . requiring proof of an independent, wilful tort, beyond the mere breach of a duty imposed by contract, as a predicate for an award of punitive damages" (citation omitted; internal quotation marks omitted)); see also, e.g., 22 Am. Jur. 2d 555, Damages § 591 (2013) (many courts award punitive damages for breach of contract "when the breach . . . amounts to or constitutes an independent tort").

Second, a minority of states have more broadly permitted the recovery of punitive damages for breach of contract in the absence of an independent tort or one of the other traditional exceptions. See footnote 3 of this opinion. They permit the recovery of punitive damages in breach of contract actions when the breach was intentional, malicious, or has elements of fraud. These states do not require that the underlying conduct be independently tortious. See, e.g., *Myers* v. *Workmen's Auto Ins. Co.*, 140 Idaho 495, 503, 95 P.3d 977 (2004) ("It is not the nature of the case, whether tort or contract, that controls the issue of punitive damages. The issue revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." (Internal quotation marks omitted.)); *Paiz* v. *State Farm Fire & Casualty Co.*,

118 N.M. 203, 210, 880 P.2d 300 (1994) ("an award of punitive damages in a [breach of contract] case must be predicated on a showing of bad faith, or at least a showing that the breaching party acted with reckless disregard for the interests of the nonbreaching party"); *Harper* v. *Ethridge*, 290 S.C. 112, 119, 123, 348 S.E.2d 374 (App. 1986) (punitive damages are available for "breach of contract accompanied by a fraudulent act," which is cause of action that does not require plaintiff "to allege the elements of [common-law] fraud and deceit"); *Rogers* v. *Louisville Land Co.*, 367 S.W.3d 196, 212 n.14 (Tenn. 2012) ("an award of punitive damages [for breach of contract] is limited to the most egregious cases and is proper only [when] there is clear and convincing proof that the defendant has acted . . . intentionally, fraudulently, maliciously, or recklessly" (internal quotation marks omitted)); *Birchwood Land Co.* v. *Ormond Bushey & Sons, Inc.*, 194 Vt. 478, 489, 82 A.3d 539 (2013) (permitting recovery of punitive damages in breach of contract action "when the breach has the character of a [wilful] and wanton or fraudulent tort, and when the evidence indicates that the breaching party acted with actual malice" (internal quotation marks omitted)).

Finally, four other states maintain the most severe constraints on the recoverability of punitive damages for breach of contract. Louisiana and Washington do not allow punitive damages unless expressly authorized by statute. See, e.g., *International Harvester Credit Corp.* v. *Seale*, 518 So. 2d 1039, 1041 (La. 1988) ("[u]nder Louisiana law, punitive or other 'penalty' damages are not allowable unless expressly authorized by statute"); *Barr* v. *Interbay Citizens Bank of Tampa, Florida*, 96 Wn. 2d 692, 699, 635 P.2d 441 (1981) ("[s]ince 1891, in an unbroken line of cases, it has been the law of [Washington] that punitive damages are not allowed unless expressly authorized by the legislature"), modi-

fied on other grounds, 96 Wn. 2d 692, 649 P.2d 827 (1982). In New York, to recover punitive damages for breach of contract, a plaintiff must not only plead and prove the existence of an independent tort but must also show that "[the egregious tortious] conduct was part of a pattern of similar conduct directed at the public generally." *Rocanova* v. *Equitable Life Assurance Society of the United States*, 83 N.Y.2d 603, 613, 634 N.E.2d 940, 612 N.Y.S.2d 339 (1994). Finally, the Nebraska constitution prohibits all punitive damages unless used to support the public schools. See, e.g., Neb. Const., art. VII, § 5; see also, e.g., *Distinctive Printing & Packaging Co.* v. *Cox*, 232 Neb. 846, 857, 443 N.W.2d 566 (1989) ("punitive, vindictive, or exemplary damages contravene [the constitution of Nebraska, article seven, § 5], and thus are not allowed in this jurisdiction").

In addition to case law from other jurisdictions, "[w]e . . . frequently have relied on the Restatement (Second) of Contracts" when evaluating novel issues of contract law in this state. *Lestorti* v. *DeLeo*, 298 Conn. 466, 475 n.8, 4 A.3d 269 (2010). The Restatement (Second) of Contracts follows the approach taken by a majority of jurisdictions and provides that "[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable."[5] 3 Restatement (Second), Contracts § 355, p. 154 (1981);

---

[5] We note that comment (b) to § 355 of the Restatement (Second) of Contracts suggests that the rule described in § 355 differs from the approach taken by some majority jurisdictions in that the use of the term "tort" in that section is "elastic" and does not require a plaintiff to plead an independent tort, especially when "the complaint [does] not show whether the plaintiff intends his case to be regarded as one in contract or one in tort." 3 Restatement (Second), Contracts § 355, comment (b), p. 155 (1981). In the present case, McCarter's complaint makes clear that McCarter is bringing a breach of contract action. The complaint provides in relevant part: "COUNT I (BREACH OF CONTRACT, INCLUDING WILFUL AND WANTON BREACH)."

see also, e.g., 22 Am. Jur. 2d, supra, § 590, p. 554 ("[a]s a general rule, courts hold that punitive damages are not available as a remedy for breach of contract, without an underlying tort" (footnote omitted)). The comments to the Restatement (Second) of Torts similarly explain that "[p]unitive damages . . . are not permitted merely for a breach of contract. When, however, the plaintiff has a right in the alternative to sue for a breach of contract or for a tort, the fact that his act or omission amounts to a breach of contract does not preclude the award of punitive damages if the action is brought for the tort and the tort is one for which punitive damages are proper." 4 Restatement (Second), Torts § 908, comment (b), p. 465 (1979). Finally, the third tentative draft of the Restatement (Third) of Torts similarly explains that "[p]unitive damages are not awarded for breach of contract, however egregious. . . . [However] the contractual context does not preclude punitive damages for a *tort* that [a] defendant commits in the course of negotiating, performing, enforcing, or breaching a contract. . . . It is generally said that the tort must be 'independent' of the breach of contract, which in practice usually means that the tort cause of action must include some element that is not part of the contract cause of action." (Citations omitted; emphasis in original.) Restatement (Third), Torts, Remedies § 39, comment (h), pp. 103–104 (Tentative Draft No. 3, 2024).

The approach adopted by a majority of jurisdictions and the Restatements is strongly supported by the different purposes for which breach of contract damages are awarded and those for which punitive damages are awarded. "The principal purpose of remedies for the breach of contract is to provide compensation for loss . . . and therefore a party injured by [a] breach of contract is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain." (Citations omitted.) *Vines* v. *Orchard Hills, Inc.*, supra,

181 Conn. 506–507. "The view has been followed that punitive damages are awarded for the sake of example and to punish the defendant, thereby deterring others from similar behavior. Indeed, courts have stated that the primary purpose of a punitive award is to deter misconduct or improper conduct." (Footnotes omitted.) 22 Am. Jur. 2d, supra, § 559, p. 517. As a result, "[c]ourts have explained that punitive damages are not ordinarily recoverable in actions for breach of contract because: (1) the damages for breach of contract are generally limited to the pecuniary loss sustained; and (2) the purpose of punitive damages is not to remedy private wrongs but to vindicate public rights." (Footnote omitted.) Id., § 590, pp. 554–55.

Damages for breach of contract are also typically limited to compensatory damages based on the rationale that some intentional breaches of contract are "efficient and [wealth enhancing] . . . ." *Thyssen, Inc.* v. *S.S. Fortune Star*, 777 F.2d 57, 63 (2d Cir. 1985); see also, e.g., C. Goetz & R. Scott, "Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach," 77 Colum. L. Rev. 554, 558 (1977) ("The modern law of contract damages is based on the premise that a contractual obligation is not necessarily an obligation to perform, but rather an obligation to choose between performance and compensatory damages. Once a contemplated exchange has been negotiated, the breaching party is merely required to provide just compensation equal to the value of performance." (Footnotes omitted; internal quotation marks omitted.)). Indeed, as courts have recognized, "[e]ven if the breach [of contract] is deliberate, it is not necessarily blameworthy. The promisor may simply have discovered that his performance is worth more to someone else. If so, efficiency is promoted by allowing him to break his promise, provided he makes good the promisee's actual

losses. If he is forced to pay more than that, an efficient breach may be deterred, and the law doesn't want to bring about such a result." *Patton* v. *Mid-Continent Systems, Inc.*, supra, 841 F.2d 750.

We recognize that Connecticut takes a unique approach to determining the amount of punitive damages a party may be awarded. Common-law punitive damages in this state are limited to litigation expenses and "serve primarily to compensate the plaintiff for his injuries . . . ." *Berry* v. *Loiseau*, supra, 223 Conn. 827. Indeed, Connecticut is one of only two jurisdictions that limits the award of common-law punitive damages to litigation expenses less taxable costs.[6] See, e.g., 1 J. Kircher & C. Wiseman, Punitive Damages: Law and Practice (2d Ed. 2022) § 4:2. We have also recognized, however, that, "in . . . light of the increasing costs of litigation," punitive damages in this state can also "punish and deter wrongful conduct." *Berry* v. *Loiseau*, supra, 827. Indeed, the fact that Connecticut has limited the amount of punitive damages to litigation expenses does not change the nature and characterization of punitive damages as punishment or deterrence. The predicate to an award of punitive damages as measured by litigation expenses is, of course, the finding of conduct sufficient to warrant punishment of the defendant. Put differently, the defen-

---

[6] Our legislature has enacted legislation that permits the recovery of punitive damages in an amount greater than the costs of litigation in certain types of actions. See, e.g., General Statutes § 42-110g (Connecticut Unfair Trade Practices Act (CUTPA)); *Stone* v. *East Coast Swappers, LLC*, 337 Conn. 589, 609–11, 255 A.3d 851 (2020) (trial court abused its discretion in declining to award attorney's fees under CUTPA because "the . . . court failed to recognize the difference between statutory punitive damages and common-law punitive damages, and failed to recognize the different purposes that attorney's fees and punitive damages serve under CUTPA" (footnote omitted)); see also, e.g., General Statutes § 52-240b (punitive damages in product liability actions); *Bifolck* v. *Philip Morris, Inc.*, 324 Conn. 402, 453–54, 152 A.3d 1183 (2016) (punitive damages provision that is applicable to product liability actions "manifestly intended the broader measure of [punitive] damages, not litigation expenses").

dant's *punishment* is an order to *compensate* the plaintiff. The fundamental nature of punitive damages in Connecticut remains punishment and deterrence of certain conduct. This is in tension with "[t]he traditional goal of the law of contract remedies [which] has not been compulsion of the promisor to perform his promise but compensation of the promisee for the loss resulting from breach. [Wilful] breaches have not been distinguished from other breaches, punitive damages have not been awarded for breach of contract, and specific performance has not been granted [when] compensation in damages is an adequate substitute for the injured party." 3 Restatement (Second), Contracts c. 16, introductory note, p. 100 (1981). In light of the compensatory nature of breach of contract damages in this state and the nature of punitive damages, we are persuaded that the nuance in Connecticut law—limiting punitive damages to litigation expenses—does not warrant a departure from the majority rule precluding an award of punitive damages in a breach of contract action in the absence of conduct that is also a tort for which punitive damages are recoverable.

We also note that, in this case, there were alternative approaches McCarter could have pursued in an attempt to protect its interests. McCarter could have included, but did not include, a provision in a retainer agreement with Jarrow addressing potential remedies should Jarrow breach its contract with McCarter, or vice versa. See footnote 1 of this opinion. In the absence of such a provision, McCarter now attempts to interpose punitive damages as a measure of damages recoverable in a breach of contract action, without advance notice to its client. The relationship between an attorney and his or her client is strictly governed by the Rules of Professional Conduct, and this court typically affords "close judicial scrutiny . . . to contracts made during the attorney-client relationship . . . ." (Citation omit-

ted.) *Marcus* v. *DuPerry*, 223 Conn. 484, 489, 611 A.2d 859 (1992). For example, subsection (b) of rule 1.5 of the Rules of Professional Conduct provides in relevant part: "Any changes in the basis or rate of the fee or expenses shall . . . be communicated to the client in writing *before the fees or expenses to be billed at higher rates are actually incurred.* . . ."[7] (Emphasis added.) We are particularly hesitant to entertain an award of punitive damages to a law firm when its client had no advance warning of such potential liability. Cf. Connecticut Bar Association Committee on Professional Ethics, Informal Opinion No. 99-26 (May 14, 1999) ("[law] firm may . . . charge interest [on] the delinquent accounts arising out of [an] existing client's new matter provided that *full disclosure of this factor is made to the client prior to taking on the new matter,* and the client agrees" (emphasis altered)).

Given that McCarter did not include, and Jarrow did not agree to, a provision addressing potential remedies in the contract between the parties in the present case— indeed, there was no written agreement at all, apart from a 1996 agreement Jarrow had with an entirely different law firm—we need not address that matter further. Cf. *Kent Literary Club of Wesleyan University at Middletown* v. *Wesleyan University*, 338 Conn. 189, 241, 257 A.3d 874 (2021) ("It is axiomatic that courts do not rewrite contracts for the parties. . . . Accordingly, it is well settled that we will not import terms into [an] agreement . . . that are not reflected in the

---

[7] Jarrow contends that awarding punitive damages, in the form of attorney's fees, to an attorney attempting to recover a fee would always be inconsistent with rule 1.5 of the Rules of Professional Conduct. Jarrow has not cited a single case or advisory opinion in Connecticut that broadly concludes that a law firm's recovery of attorney's fees from a client in a collection dispute would always constitute a violation of rule 1.5. However, we need not decide that question given our conclusion that a law firm may not recover common-law punitive damages unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.

contract." (Citation omitted; internal quotation marks omitted.)).

We are persuaded that the rule adopted by the Restatements and the majority of jurisdictions strikes the appropriate balance among the competing policy interests at play. Accordingly, we conclude that a law firm may not recover common-law punitive damages for its client's breach of contract unless it pleads and proves the existence of an independent tort for which punitive damages are recoverable.[8]

McCarter and the amicus curiae, the Connecticut Trial Lawyers Association, nevertheless urge this court to adopt a rule broadly permitting the recovery of common-law punitive damages when the conduct causing the breach of contract is wilful, malicious, or reckless, regardless of whether the conduct constitutes an independent tort. McCarter relies almost entirely on tort cases for the proposition that "this court has long upheld the award of attorney's fees as common-law punitive damages as compensation when a party's conduct was wilful, malicious, or with reckless disregard of another's rights." Although that statement is undoubtedly true in the tort context, as we explained, the purpose for the award of damages for breach of contract is different from damages in the tort context. More important, McCarter has not been able to sufficiently articulate a manageable and meaningful standard for wilful, malicious, or reckless conduct in the breach of contract context. We believe that the rule adopted by a majority of jurisdictions and the Restatements, which requires

---

[8] We do not disturb case law in this state that has allowed the recovery of punitive damages in certain breach of contract actions brought against the insurer or surety in the insurance and surety contexts, respectively. See, e.g., *Barry* v. *Posi-Seal International, Inc.*, supra, 40 Conn. App. 584–85 (discussing case law). We leave for another day the determination of whether Connecticut will recognize additional exceptions to the majority rule beyond those in the insurance and surety contexts. See footnote 3 of this opinion.

the existence of an independent tort for which punitive damages may be recoverable, provides adequate protection for plaintiffs while also providing clear guidance as to the circumstances in which punitive damages may be recovered.

The answer to the certified question is that a law firm may not recover common-law punitive damages for its client's breach of contract unless it pleads and proves the existence of an independent tort for which punitive damages may be recoverable.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.