******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# FRANK CHARLES WHITE *v.* FCW LAW OFFICES ET AL.
## (SC 21076)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

### *Syllabus*

The plaintiff attorney sought to recover damages from the defendants for, inter alia, their alleged theft of his identity and violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.), in connection with their use of the plaintiff's name and attorney registration number to defraud certain individuals. The trial court rendered a default judgment for the plaintiff and awarded him compensatory damages in the amount of $150,000 on his identity theft claim and $300,000 in punitive damages on his CUTPA claim, as well as attorney's fees and costs. On appeal, the Appellate Court determined that the trial court had improperly failed to award the plaintiff treble damages pursuant to the statute (§ 52-571h (b)) governing actions for damages resulting from identity theft but that the plaintiff could not recover both punitive damages under CUTPA and treble damages under § 52-571h (b) because such an award would violate the principle that a plaintiff is entitled to recover only once for losses sustained in connection with the same transaction, occurrence or event. Accordingly, the Appellate Court remanded the case for vacatur of those awards and with direction to award the plaintiff treble damages in the amount of $450,000 for identity theft. On the granting of certification, the plaintiff appealed to this court, claiming that the Appellate Court had incorrectly determined that he could not recover both punitive damages under CUTPA and treble damages under § 52-571h (b). *Held*:

The Appellate Court correctly concluded that the plaintiff was entitled to treble damages under § 52-571h (b) but incorrectly concluded that he could not also recover punitive damages under CUTPA, and, accordingly, this court reversed in part the Appellate Court's judgment and remanded the case to that court with direction to reinstate the trial court's punitive damages award under CUTPA.

Section 52-571h (b) requires that a plaintiff who proves identity theft be awarded "the greater of one thousand dollars or treble damages," and, because the trial court found that the plaintiff had suffered damages in connection with his identity theft claim in the amount of $150,000, the Appellate Court correctly determined that the plaintiff was entitled to recover three times that amount, or $450,000.

Damages are duplicative in violation of the rule precluding double recovery, however, not simply because their availability arises out of the same transac-

tion, occurrence or event, but because they redress the same legal harm, and the law may provide a plaintiff multiple, cumulative remedies to redress different types of harm, even if precipitated by a single incident.

Unlike treble damages under § 52-571h (b), punitive damages under CUTPA are not intended to compensate a plaintiff for his losses but, rather, to punish wrongdoers and to deter wrongdoing in commerce, nothing in CUTPA or in § 52-571h (b), which expressly allows a trial court to award a successful plaintiff "other remedies provided by law," indicates that the remedies provided under those statutes are intended to be exclusive or in lieu of any other remedies, and, whereas § 52-571h (b) requires the trial court to award treble damages to a prevailing plaintiff, the award of punitive damages under CUTPA is left to a court's discretion.

Argued April 10—officially released August 5, 2025

*Procedural History*

Action to recover damages for, inter alia, identity theft, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the named defendant was defaulted for failure to appear; thereafter, the case was tried to the court, *Swienton, J.*; judgment for the plaintiff, from which the plaintiff appealed to the Appellate Court, *Alvord, Elgo* and *Suarez, Js.*, which reversed in part the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Reversed in part*; *judgment directed*.

*Frank Charles White*, self-represented, the appellant (plaintiff).

*Jeffrey Gentes* and *Annie Chen, Lauren Taylor* and *Uma Menon*, certified legal interns, filed a brief for the National Association of Consumer Advocates, Connecticut chapter, as amicus curiae.

*Opinion*

ECKER, J. The plaintiff, Frank Charles White, brought this action against the defendants, FCW Law Offices and two John Does, seeking damages for identity theft pursuant to General Statutes § 52-571h (b) and unfair or

deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[1] The trial court rendered a default judgment in favor of the plaintiff and awarded him compensatory damages in the amount of $150,000 on his identity theft claim and $300,000 in punitive damages on his CUTPA claim. The plaintiff appealed to the Appellate Court, claiming that the trial court had improperly failed to award him treble damages under § 52-571h (b). See *White* v. *FCW Law Offices*, 228 Conn. App. 1, 2, 323 A.3d 406 (2024). The Appellate Court agreed but concluded that the plaintiff could not recover both punitive damages under CUTPA and treble damages under § 52-571h (b) because such an award would violate the principle that a plaintiff is entitled to recover only once for losses sustained in connection with the same transaction, occurrence or event. See id., 6–7, 10. The Appellate Court reversed in part the trial court's judgment and remanded for vacatur of both the punitive and compensatory damages awards and to award the plaintiff treble damages in the amount of $450,000 for identity theft. Id., 11.

On appeal to this court,[2] the plaintiff claims that the Appellate Court incorrectly determined that he could not recover both punitive damages under CUTPA, General Statutes § 42-110g (a), and treble damages under the identity theft statute, § 52-571h (b). We agree and, accordingly, reverse in part the judgment of the Appellate Court.

---

[1] The complaint also sought the remedy of quo warranto. See footnote 3 of this opinion and accompanying text. The issues on appeal involve only the trial court's award of damages.

[2] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that a plaintiff may not recover both punitive damages under [CUTPA] . . . and treble damages under . . . § 52-571h because such recovery would violate the principle that a plaintiff is entitled to recover only once for losses sustained in connection with the same transaction, occurrence or event?" *White* v. *FCW Law Offices*, 350 Conn. 928, 326 A.3d 250 (2024).

The trial court made the following factual findings. The plaintiff is a licensed, practicing attorney in the state of Connecticut. The defendants operate a criminal organization believed to be based in Mexico. Starting sometime prior to 2019, the defendants committed identity theft by using the plaintiff's name and juris number to establish a sham website for the purpose of defrauding unsuspecting time-share owners in the United States and Canada by persuading them to sell their Mexican time-shares. As part of the fraudulent scheme, the victims were induced to transfer funds to the defendants based on the false representation that the funds would be returned to them at the time of the real estate closing.

The plaintiff became aware of the scam in February, 2019, after his mother received a telephone call from a potential victim in Lansing, Michigan, who was trying to contact the plaintiff to determine whether an offer to purchase his Mexican time-share was legitimate. After learning of the scam, the plaintiff immediately contacted the Statewide Grievance Committee. He also called the telephone number listed on the defendants' website purporting to be the telephone number of the FCW Law Offices in New Haven. During the phone call, a person claiming to be an attorney threatened the plaintiff, stating " 'calm down and you won't get hurt.' "

The plaintiff thereafter did everything in his power to stop the defendants' fraud. He was instrumental in causing the defendants' website to be taken down twice, although each time it reappeared under a different domain name. He also filed complaints with the Office of the Chief State's Attorney, the Department of Consumer Protection, the Federal Trade Commission, the Internal Revenue Service, and the Federal Bureau of Investigation. Only the Statewide Bar Counsel offered him any assistance. That office assigned an investigator, Garritt Kelly, to try to ascertain the identity of the indi-

viduals behind the fraudulent scheme and to assist the plaintiff in shutting down their website. Kelly ultimately determined that the scam had approximately forty victims whose cumulative losses totaled millions of dollars. One victim, an elderly woman in Arizona, was swindled out of her entire life savings of $728,982.73.

The plaintiff commenced this action against the defendants in June, 2020. The first two counts of the complaint sought a writ of quo warranto removing the defendants from office as officers of the court and commissioners of the Superior Court.[3] In count three, the plaintiff alleged identity theft in violation of General Statutes §§ 53a-129a and 52-571h. In count four, the plaintiff alleged a violation of CUTPA based on the same conduct at issue in counts one through three. The defendants did not answer the complaint.

The trial court granted the plaintiff's motion to default the defendants for failure to appear. It thereafter granted the plaintiff's motion for a partial judgment by default on the quo warranto claims. The court subsequently held a hearing to adjudicate the plaintiff's damages under counts three and four.

The trial court issued a memorandum of decision in which it concluded that the plaintiff had proven his entitlement to damages under §§ 42a-110g (a) and 52-571h (b). The court found that "[t]he plaintiff has lived with [the] nightmare [of this fraud] since February, 2019. It has affected his family, his career, his livelihood, and his emotional and mental well-being." The court further stated that the plaintiff was "still receiving calls from potential . . . and actual victims, 'some of whom

---

[3] "A successful quo warranto action unseats an illegal office holder and declares the position vacant. It does not place the rightful claimant into the office. . . . The parties defendant or respondent in quo warranto proceedings are those charged with exercising the particular office or franchise without lawful right." (Citation omitted; internal quotation marks omitted.) *Lopez* v. *Board of Education*, 310 Conn. 576, 591, 81 A.3d 184 (2013).

are . . . [convinced that the plaintiff] is involved [in the scam].' " Each time the plaintiff receives such a call, he "usually end[s] up staying . . . on the phone with these folks [for one hour], trying to talk them down, [and to] convince them" that he is not involved in the scam.

The trial court observed that the plaintiff "is seeking compensatory damages, punitive damages under CUTPA, attorney's fees, and costs. Although the plaintiff has not suffered any actual pecuniary loss, there is no question that he has suffered emotional distress due to the actions of [the] persons behind this fraud. He did not seek any professional medical/psychological diagnosis, treatment, or medication. However, he credibly testified as to the toll it has taken on him." With respect to the identity theft claim, the court awarded the plaintiff $150,000 in compensatory damages, $20,000 in attorney's fees, and $1329.21 in costs. The court also awarded the plaintiff $300,000 in punitive damages on his CUTPA claim under § 42-110g (a), for a total award of $471,329.21.

On July 10, 2023, the plaintiff filed a motion for reconsideration, reargument, additur, or, alternatively, articulation, in which he sought an order trebling the $150,000 compensatory damages award pursuant to § 52-571h (b)[4] or, in the alternative, an articulation of the court's reason for not awarding treble damages. The trial court denied the motion without explanation.

---

[4] General Statutes § 52-571h (b) provides: "In any civil action brought under this section in which the plaintiff prevails, the court shall award the greater of one thousand dollars or treble damages, together with costs and a reasonable attorney's fee. Damages shall include, but need not be limited to, documented lost wages and any financial loss suffered by the plaintiff as a result of identity theft, as defined in section 53a-129a, 53a-129b, or 53a-129c. The court may award other remedies provided by law, including, but not limited to, the costs of providing not less than two years of commercially available identity theft monitoring and protection for such individual."

The plaintiff appealed to the Appellate Court, claiming that the trial court improperly failed to award him treble damages in light of the mandatory language of § 52-571h (b), which entitled him to the greater of either $1000 or treble the amount of his actual damages of $150,000. See *White* v. *FCW Law Offices*, supra, 228 Conn. App. 6–7. Following oral argument, the Appellate Court, sua sponte, ordered the plaintiff to file a supplemental brief "addressing whether an award of treble damages under . . . § 52-571h and an award of punitive damages under CUTPA in the present action would violate the rule precluding double recovery because both damage[s] awards would be based [on] the same transaction, occurrence or event." (Internal quotation marks omitted.) Id., 7 n.8.

In its decision, the Appellate Court stated that the trial court "plainly found for the plaintiff on the identity theft count of his complaint, thereby entitling him to treble damages pursuant to § 52-571h (b). At the same time, the plaintiff correctly recognizes that, in addition to the court's award of damages under § 52-571h, the court awarded him $300,000 on the fourth count of his complaint in connection with an alternative theory of liability under CUTPA. . . . In our evaluation of what remedy, if any, is proper in light of the [trial] court's failure to award treble damages under § 52-571h, we are guided by the fundamental principle that a plaintiff is entitled to be compensated only once for his injury." Id., 9. "In light of the foregoing," the Appellate Court "conclude[d] that the proper remedy is to reverse the judgment of the [trial] court awarding compensatory damages of $150,000 pursuant to § 52-571h and to direct the court, on remand, to award treble damages, exclusive of its unchallenged award of costs and attorney's fees, in the amount of $450,000 on the third count of the plaintiff's complaint. In light of that relief, [the Appellate Court was] compelled to further conclude, as a matter

of law, that the [trial] court's award of [punitive] damages under CUTPA [could not] stand, as that action was based [on] the same transaction, occurrence or event on which the plaintiff based his action for damages resulting from identity theft under § 52-571h. The court's award of damages under CUTPA thus violate[d] the principle that the plaintiff is entitled to recover only once for the losses he sustained in connection with that transaction, occurrence or event." Id., 10.

In support of this conclusion, the Appellate Court relied on *AAA Advantage Carting & Demolition Service, LLC* v. *Capone*, 221 Conn. App. 256, 261, 289–90, 301 A.3d 1111, cert. denied, 348 Conn. 924, 304 A.3d 442 (2023), and cert. denied, 348 Conn. 924, 304 A.3d 442 (2023), in which it held that a limited liability company could not recover the full amount of its actual damages of $17,000 on both its conversion and statutory theft claims arising from the same illegal withdrawal of funds, which the company had pleaded in the alternative, because such an award would violate the rule against double recovery. See *White* v. *FCW Law Offices*, supra, 228 Conn. App. 7 n.8, 9–10. This certified appeal followed.

On appeal to this court, the plaintiff argues that the Appellate Court incorrectly determined that it would violate the rule against double recovery to award both punitive damages under § 42-110g (a) and treble damages under § 52-571h (b). The plaintiff contends that, in the absence of explicit statutory language to the contrary, remedies available under remedial statutes such as §§ 42-110g and 52-571h are intended to be cumulative and not in lieu of other statutory or common-law remedies. He further contends that the common-law rule against double recovery, which ensures that a litigant is compensated only once for the same injury, is not implicated in the present case because punitive damages under CUTPA, unlike treble damages under

the identity theft statute, are not intended to compensate plaintiffs for their losses but to punish defendants for their misconduct, and to deter future CUTPA violations. We agree with the plaintiff.[5]

Whether the recovery of both punitive damages under § 42-110g (a) and treble damages under § 52-571h (b) violates the common-law rule against double recovery is a question of law over which we exercise plenary review. See, e.g., *Tomick* v. *United Parcel Service, Inc.*, 324 Conn. 470, 477, 153 A.3d 615 (2016). Damages are duplicative if they redress the same legal harm. In the usual case, this principle is expressed in terms of compensation for the same injury, or double recovery. See, e.g., *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 663, 935 A.2d 1004 (2007) ("[T]he rule precluding double recovery is a simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury. . . . The social policy behind this concept is that it is a waste of society's economic resources to do more than compensate an injured party for a loss and, therefore, that the judicial machinery should not be engaged in shifting a loss in order to create such an economic waste." (Internal quotation marks omitted.)); see also *Catalina* v. *Nicolelli*, 90 Conn. App. 219, 225, 876 A.2d 588 (2005) ("Duplicate recoveries must not be awarded for the same underlying loss under different legal theories. . . . Although a plaintiff is entitled to allege alternative theories of liability in separate claims, he is not entitled

---

[5] The defendants have never appeared in this case and remain nonappearing in this appeal. On January 30, 2025, we invited amici curiae to file briefs that address the following question: "Did the Appellate Court correctly conclude that a plaintiff may not recover both punitive damages under [CUTPA] . . . and treble damages under . . . § 52-571h because such recovery would violate the principle that a plaintiff is entitled to recover only once for losses sustained in connection with the same transaction, occurrence or event?" In response, the Connecticut chapter of the National Association of Consumer Advocates filed a brief in support of the plaintiff.

to recover twice for harm growing out of the same transaction, occurrence or event." (Citation omitted.)).

Remedies are not duplicative simply because their availability arises out of the same transaction, occurrence or event. Just as our criminal statutes authorize multiple punishments for conduct occurring in the same transaction when the statutes in question are intended "to protect separate and distinct interests of society;" (internal quotation marks omitted) *State* v. *Bernacki*, 307 Conn. 1, 29, 52 A.3d 605 (2012), cert. denied, 569 U.S. 918, 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013); see, e.g., id., 29–30; so, too, the law sometimes provides a civil claimant multiple, cumulative remedies to redress different or distinctive types of harm, even if precipitated by a single incident. See, e.g., *New England Estates, LLC* v. *Branford*, 294 Conn. 817, 853, 988 A.2d 229 (2010) ("The damages recovered by the owners in the . . . action [brought pursuant to 42 U.S.C. § 1983] simply are not duplicative of the just compensation awarded in the valuation appeal. They are additional damages recovered on the basis of the town's bad faith actions in accomplishing the taking."); *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 533, 562 A.2d 1100 (1989) ("[w]e perceive nothing conceptually or logically inappropriate in allowing, in a proper case . . . the allowance of both compensatory and punitive damages"); see also *Martinez* v. *Port Authority of New York & New Jersey*, 445 F.3d 158, 160–61 (2d Cir. 2006) (holding that trial court correctly determined that separate damages awards for emotional distress and loss of liberty in connection with false arrest claim, and separate awards for false arrest and malicious prosecution, were not duplicative).

We find particularly noteworthy decisions from this court holding that remedies available under separate statutory schemes that address the same abusive practices are cumulative in the absence of statutory lan-

guage to the contrary. See, e.g., *Hernandez* v. *Apple Auto Wholesalers of Waterbury, LLC*, 338 Conn. 803, 829, 259 A.3d 1157 (2021) ("[t]here is nothing in the text or legislative history of [General Statutes] § 52-572g or 16 C.F.R. § 433.2 stating or implying that the respective remedies afforded thereunder were intended to be exclusive"); *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 722, 652 A.2d 496 (1995) ("Our decision that the remedies of [the Retail Installment Sales Financing Act (RISFA), General Statutes § 36a-770 et seq.] and the [Uniform Commercial Code (UCC), General Statutes § 42a-1-101 et seq.] are cumulative is further supported by public policy considerations. Repossession statutes are enacted to protect the consumer from well documented repossession abuses and to encourage and promote compliance with the laws that govern such actions."); see also *Neibel* v. *Trans World Assurance Co.*, 108 F.3d 1123, 1130–31 (9th Cir. 1997) (holding that plaintiff may receive both treble damages under Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1961 et seq., and state law punitive damages for same conduct in light of statutory language that court may award other remedies in addition to those provided under RICO); *Rhue* v. *Dawson*, 173 Ariz. 220, 232–35, 841 P.2d 215 (App. 1992) (holding that plaintiff could recover both treble damages under state civil racketeering statute and punitive damages for fraud and breach of fiduciary duty arising out of same conduct because racketeering statute was remedial, and remedies provided thereunder were not mutually exclusive of other remedies).

There is nothing in CUTPA or § 52-571h (b) suggesting that the respective remedies provided thereunder are intended to be exclusive or in lieu of any other remedies. But cf. General Statutes § 52-572n (a) ("[a] product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers,

including actions of negligence, strict liability and warranty, for harm caused by a product"). To the contrary, § 52-571h (b) expressly provides that, in addition to treble damages, the trial court may award a successful plaintiff "other remedies provided by law . . . ." Likewise, "[t]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law. The ability to recover both [attorney's] fees . . . and punitive damages . . . enhances the private CUTPA remedy and serves to encourage private CUTPA litigation. The legislative history . . . demonstrates that CUTPA seeks to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts. *To interpret CUTPA narrowly, perhaps on the ground that a victimized consumer has other, less complete, remedies available to him, effectively negates this legislative intent.*" (Citations omitted; emphasis added; footnote omitted.) *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 617–18, 440 A.2d 810 (1981).

We agree with the Appellate Court that the plaintiff was entitled to treble damages under § 52-571h (b). That section provides in relevant part that, in any action brought pursuant to that section in which the plaintiff prevails, "the court *shall* award the greater of one thousand dollars or treble damages, together with costs and a reasonable attorney's fee. . . ." (Emphasis added.) General Statutes § 52-571h (b). In the present case, the trial court found that the plaintiff had suffered actual damages in the amount of $150,000. Therefore, under § 52-571h (b), the plaintiff was entitled to three times that amount, or $450,000, as well as an award of attorney's fees and costs. We disagree with the Appellate Court, however, that an award of punitive damages under § 42-110g (a) is not one of the "other remedies" that § 52-571h (b) authorizes because such an award

would be duplicative of the treble damages award. We conclude that the two awards do not redress the same harm and, therefore, are not duplicative.

It is axiomatic that, in the context of CUTPA, punitive damages are not intended to compensate a plaintiff for his losses; their purpose is to punish and deter wrongdoing. See, e.g., *Stone* v. *East Coast Swappers, LLC*, 337 Conn. 589, 603, 255 A.3d 851 (2020) ("unlike the purpose of permitting an award of attorney's fees—to foster the use of private attorneys in vindicating the public goal of ferreting out unfair trade practices in consumer transactions by commercial actors generally—the purposes of punitive damages [under CUTPA] are focused on deterrence and punishment of particular commercial actors"); *Ulbrich* v. *Groth*, 310 Conn. 375, 454–55, 78 A.3d 76 (2013) (CUTPA's punitive damages punish and deter "reprehensibl[e]" conduct in commerce); see also *McCarter & English, LLP* v. *Jarrow Formulas, Inc.*, 351 Conn. 186, 209, 329 A.3d 898 (2025) ("[t]he fundamental nature of punitive damages in Connecticut remains punishment and deterrence of certain conduct").

Whereas § 52-571h (b) requires the trial court to award treble damages to a plaintiff who prevails under § 53a-129a by proving that the defendant knowingly and without permission used the personal identifying information of another person to obtain or attempt to obtain money, goods or credit, a punitive damages award under CUTPA is left to the discretion of the court. See General Statutes § 42-110g (a) ("[t]he court may, in its discretion, award punitive damages"). In exercising its discretion, the trial court may consider several factors, the most important of which is "the reprehensibility of a defendant's conduct . . . . Reprehensibility is determined by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of

the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." (Citation omitted; internal quotation marks omitted) *Ulbrich* v. *Groth*, supra, 310 Conn. 455–56; see id., 446 ("the flavor of the basic requirement to justify an award of punitive damages [under CUTPA] is described in terms of wanton and malicious injury, evil motive and violence" (internal quotation marks omitted)). Thus, although a claim for punitive damages under § 42-110g (a) and a claim for treble damages under § 52-571h (b) may rely on the same or overlapping proof, they seek relief for distinct categories of legal harm, and the court's discretion as to whether to award damages and the amount to award is very different under each statute.

We find instructive the discussion of this point in *Torres* v. *Caribbean Forms Manufacturer*, 286 F. Supp. 2d 209 (D.P.R. 2003), aff'd sub nom. *Rodriguez-Torres* v. *Caribbean Forms Manufacturer, Inc.*, 399 F.3d 52 (1st Cir. 2005). In that case, the District Court concluded that allowing the plaintiff to recover punitive damages under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., in addition to double damages under Puerto Rico's antidiscrimination laws, did not amount "to double punishment for precisely the same conduct, once under a federal theory of liability and again under the corresponding state theory." *Torres* v. *Caribbean Forms Manufacturer*, supra, 220. In so concluding, the District Court stated: "[T]he double damages imposed by [the Puerto Rico statutes] are not punitive damages [that] result from a defendant's elevated degree of culpability. [The Puerto Rico statutes] grant double damages to all victorious plaintiffs. This means that the doubling of the damages is not a punishment levied due to particularly despicable con-

duct. It is simply the measure of damages imposed on all employers who intentionally discriminate against their employees. On the other hand, punitive damages under Title VII are . . . granted [only] to plaintiffs who prove that the defendant 'engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.' 42 U.S.C. § 1981a (b) (1) [2000]. The jury in the present case made a specific finding to this effect. It is based on such a finding that [the jury] awarded punitive damages under Title VII. Hence, the punitive damage[s] award was imposed as punishment for [the] [d]efendants' malicious and recklessly indifferent conduct. This is different from the reason why double damages are awarded under [Puerto Rico antidiscrimination laws]. The punitive damages under Title VII are not punishing the same conduct as the double damages award under [Puerto Rico law] (which are simply compensation for the intentional discrimination), but are rather punishing the higher degree of culpability established by the jury's finding of malice and reckless indifference." (Emphasis omitted.) *Torres* v. *Caribbean Forms Manufacturer*, supra, 220.

The analysis in *Torres* is persuasive and aligns with Connecticut law on the subject. Although we have stated that statutes authorizing multiple damages serve both a remedial and punitive purpose; see, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 97–98, 881 A.2d 139 (2005); our case law makes it clear that "punitive damages are *not* equivalent to statutory multiple damages"; (emphasis added) id., 93; and that both types of damages may be awarded in a single case. See, e.g., *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 285, 472 A.2d 306 (1984) (concluding that plaintiff was entitled to recover compensatory damages, exemplary damages and statutory treble damages for same misconduct); *Caulfield* v. *Amica Mutual Ins. Co.*, 31

Conn. App. 781, 786 n.3, 627 A.2d 466 (1993) ("[i]t is well settled . . . that statutory multiple damages awarded pursuant to [General Statutes] § 14–295, while serving a similar punitive purpose . . . are separate and distinct from [common-law] punitive damages and are awarded in addition thereto in appropriate cases" (citations omitted)), cert. denied, 227 Conn. 913, 632 A.2d 688 (1993); see also *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 635–36, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) ("Notwithstanding its important incidental policing function, the [treble damages] cause of action conferred on private parties by § 4 of the Clayton Act, 15 U.S.C. § 15 . . . seeks primarily to enable an injured competitor to gain compensation for that injury. Section 4 . . . is in essence a remedial provision. . . . Of course, treble damages also play an important role in penalizing wrongdoers and deterring wrongdoing . . . . It nevertheless is true that [a treble damages] provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy." (Internal quotation marks omitted.)); *Investment Partners, L.P.* v. *Glamour Shots Licensing, Inc.*, 298 F.3d 314, 317 (5th Cir. 2002) ("[u]nlike punitive damages, which punish a wrongdoer, [treble damages] compensate an injured party"); *Lyke* v. *Anderson*, 147 App. Div. 2d 18, 30–31, 541 N.Y.S.2d 817 (1989) (Even though treble damages under New York's wrongful eviction statute and common-law punitive damages are both "penal in nature . . . they are two separate types of penal damages, not equal [or] duplicative . . . . Treble damages are a statutory remedy based on the [l]egislature's desire to protect a tenant from unlawful eviction and to punish certain violators. Punitive damages are a common-law remedy, generally requiring more egregious conduct involving malice, [whereby] the wrong complained of

is morally culpable, or is actuated by evil and reprehensible motives . . . ." (Citations omitted; internal quotation marks omitted.)).

The Pennsylvania Supreme Court reached a similar conclusion in *Dwyer* v. *Ameriprise Financial, Inc.*, Pa. , 313 A.3d 969 (2024). There, the trial court declined to award treble damages under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (CPL) on the ground that they were duplicative of the jury's award of common-law punitive damages punishing the same conduct for which the defendant was found liable under the CPL. See id., 973. In reversing the judgment of the trial court, the Pennsylvania Supreme Court stated: "Although we have characterized treble damages under the CPL as having a deterrent, punitive element and a punitive dynamic, any such element or dynamic is incidental. By design, the CPL incentivizes private causes of action to root out fraudulent and deceptive practices in the marketplace, compensates injured parties, and deters wrongful practices. The nature of [treble damages] available under the CPL remains remedial even if [their] imposition . . . may have the effect of encouraging compliance with the provisions of the statute." (Footnotes omitted; internal quotation marks omitted.) Id., 983. The Pennsylvania Supreme Court held, "as a matter of law, that the availability of . . . treble damages under [the CPL] is not dependent [on] other damages to which the plaintiff is also entitled"; id., 984; and observed that, "[when] an innocent consumer is harmed by fraudulent or deceptive consumer transactions, the consumer should not receive less under the CPL because the defendant's conduct also created liability [for punitive damages]. Otherwise, marketplace sellers would receive a volume discount on their wrongful conduct." Id., 983.

Indeed, in many cases of identity theft, the availability of CUTPA's punitive damages would seem vital to implementing that statute's policy of incentivizing victims, acting as private attorneys general, to pursue claims rooting out the fraudulent schemes often associated with that crime. See, e.g., *Stone* v. *East Coast Swappers, LLC*, supra, 337 Conn. 605 (recognizing "CUTPA's policy of encouraging litigants to act as private attorneys general"). Because an individual plaintiff's actual damages, even when trebled, are often relatively small in comparison to the systemic harm resulting from those schemes, the prospect of an award of punitive damages may encourage individuals to pursue claims that otherwise would not be filed. See, e.g., *Jacobs* v. *Healey Ford-Subaru, Inc.*, supra, 231 Conn. 724 (The plaintiff was entitled to damages under both RISFA and the UCC because, "[u]nder the facts of this case, the remedy afforded by the UCC is the only real deterrent. It is irrelevant that the penalty bears little or no relation to the actual loss. . . . Imposing cumulative remedies for a violation of RISFA and the UCC obviously creates a greater incentive to comply with repossession laws." (Citation omitted.)). The present case is illustrative of the far-reaching harm that can result from the crime of identity theft. Not only was the plaintiff injured by the defendants' theft of his identity; dozens of victims were defrauded of millions of dollars, as well. To summarize, the plaintiff is entitled to an award of punitive damages under CUTPA in addition to an award of treble damages under § 52-571h (b).

The judgment of the Appellate Court is reversed insofar as it concluded that the award of punitive damages under CUTPA must be vacated and the case is remanded to that court with direction to reinstate the trial court's

punitive damages award under CUTPA;[6] the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

---

[6] There is no claim before us that the case should be remanded to the trial court for a new hearing in damages because the trial court might have awarded a lesser amount of punitive damages had it known that the plaintiff was entitled to treble damages under § 52-571h (b). See, e.g., *State* v. *Saucier*, 283 Conn. 207, 223, 926 A.2d 633 (2007) ("[a]n unmentioned claim is, by definition, inadequately briefed, and one that is generally . . . considered abandoned" (internal quotation marks omitted)). Likewise, this opinion does not address any other claims that could have been made by the defendants but were not made because of their failure to appear.